PETTY v. STATE.

Opinion delivered October 7, 1905.

1. MURDER—BURDEN OF PROOF.—An instruction in a murder case in the language of the statute that, "the killing being proved, the burden of proving circumstances of mitigation that justify or excuse the homicide shall devolve on the accused," is not misleading if the jury are further instructed upon the doctrine of reasonable doubt; as the two instructions mean that when the killing is proved, if the State produce no evidence tending to mitigate or excuse the homicide, it devolves upon the accused to do so, but when any evidence is introduced, either on the part of the State or the accused, which, taken in connection with the other evidence in the case, raises in the minds of the jury a reasonable doubt of accused's guilt, they should acquit. (Page 517.)

2. MURDER IN SECOND DEGREE—INTENT.—A specific intent to take life is not a necessary element of murder in the second degree. (Page 518.)

3. FORMER TESTIMONY—ABSENT WITNESS.—Where one who was present at the examining trial in a felony case testifies that he took down the testimony of a witness in writing, and that the writing contains an accurate statement of such testimony, he may be allowed, in the absence of such witness, to read such writing to the jury. (Page 518.)

4. NEW TRIAL—SURPRISE.—A party cannot claim to have been surprised by by the testimony of witnesses of the opposite party, nor by evidence introduced by such party, if the same tends to support the issues joined, and is such as might have been reasonably anticipated. (Page 519.)

5. HOMICIDE—WORDS AS PROVOCATION.—Provocation caused by words only is not sufficient to reduce a homicide from murder to manslaughter. (Page 520.)

6. SAME.—While passion created by abusive words does not reduce a

homicide from murder to manslaughter, still such provócation may well be considered in assessing the amount of punishment. (Page 520.)

7. SAME—REDUCTION OF PUNISHMENT.—Where the evidence in a murder case shows that the killing was the result of a sudden quarrel, and was done under the heat of passion caused by very provoking language on the part of deceased, and under circumstances which indicate that the punishment of fifteen years' imprisonment, assessed by the jury, was excessive, the punishment will be reduced. (Page 520.)

Appeal from Pulaski Circuit Court.

ROBERT J. LEA, Judge.

Affirmed with modification.

STATEMENT BY THE COURT.

Crite Petty was indicted by the grand jury of Pulaski County for murder in the first degree for killing one Arthur Pursur by stabbing him with a knife.

On the trial it was shown that during the afternoon of the 18th day of February, 1905, the defendant, Petty, and Pursur engaged in a friendly game of cards at the Turf Exchange Saloon in Argenta. Petty won the game, and then said to Pursur, "Well, I will take a cigar." Pursur was somewhat under the influence of liquor, and replied to Petty by an insulting remark. Soon afterwards they began to fight, Petty using a pocket knife and Pursur a chair. Petty cut Pursur twice with the knife; one cut was on the shoulder, and the other on the right side of the neck. The coroner, who examined the body, testified that the wound on the neck "was a gash about five inches long, commencing back of the right ear and ranging down, cutting through all the large blood vessels in the side of the neck and cutting the neck nearly half through." Shortly after this wound was given the fight was stopped. Pursur put his hand on his neck, and pulled his collar down. The blood spurted from the wound. When Petty noticed the blood streaming from the wound of Pursur, he picked up his hat, and left the saloon. Pursur was assisted to the floor, and in a moment or two was dead.

The jury returned a verdict of guilty of murder in the second degree, and assessed the punishment at fifteen years in the penitentiary.

The defendant appealed.

*W. R. F. Paine* and *J. W. & M. House,* for appellant.

The court erred in permitting the introduction of the statement of David Hughes taken in the examining court. Kirby's Dig. § § 2148, 2153, 2157, 800; 66 Ark. 545; Kirby's Dig. § 1997; 40 Ark. 461; 33 Ark. 539; Gantt's Dig. § 1707; 22 Ark. 372; 47 Ark. 185; 68 Ark. 441; 37 Ark. 324; 29 Ark. 23; 60 Ark. 400; 2 Ark. 229; 54 S. W. 948; 30 So. 658; 45 Ia. 14; 78 Ia. 292; 105 Cal. 655. Instruction No. 8 was error, as it eliminated the question of reasonable doubt. Kirby's Dig. § 2387; 88 S. W. 822; 71 Ark. 450; 148 U. S. 665; 110 U. S. 47. Instruction No. 3 requested by appellant should have been given. 59 Ark. 132. A new trial should have been granted on the ground of surprise. 2 Ark. 45; 11 Ark. 16; 18 Ark. 570; 20 Ark. 55; 26 Ark. 496; 34 Ark. 659; 41 Ark. 229.

*Robert L. Rogers, Attorney General,* for appellee.

The verdict is supported by the evidence. 74 Ark. 491. A proper foundation was laid for the admission of the statement of David Hughes. 58 Ark. 353; 22 Ark. 375; 33 Ark. 540; 40 Ark. 461; 60 Ark. 442; 16 Cyc. 1110.

RIDDICK, J., (after stating the facts.) This is an appeal by a defendant from a judgment convicting him of murder in the second degree, and assessing his punishment at fifteen years' imprisonment. We have read the instructions given by the presiding judge, and find nothing calculated to prejudice the rights of the defendant.

Counsel contends that the court erred in reading to the jury, as part of his charge, a section of the digest which provides that, "the killing being proved, the burden of proving circumstances of mitigation that justify or excuse the homicide devolves on the accused," etc. Kirby's Digest, § 1765. Counsel say that the giving of this section eliminated the doctrine of reasonable doubt, but we do not think so. When taken in connection with the instruction on the question of reasonable doubt given by the court, it means nothing more than that, when the killing is proved, if the State produces no evidence tending to mitigate or excuse the homicide, it devolves on the accused to do so; but when any evidence is introduced, either on the part of the State or the defendant, which,

taken in connection with the other evidence in the case, raises in the minds of the jury a reasonable doubt of the guilt of the defendant, they should acquit. This was a correct statement of the law. and is not in conflict with the decision in *Cogburn* v. *State, ante,* p. 110, but, as we think, is supported by that decision.

Again, it is said that the court told the jury that, in order to make out the crime of murder in the second degree, it was not necessary to show a specific intent to take life. But this was also correct, for the main distinction between murder in the first and second degree is that to make out the crime of the first degree such a specific intent must be shown, while it is not necessary in the second degree. *Brassfield* v. *State,* 55 Ark. 556.

It is contended with much force that the court erred in permitting the prosecuting attorney to prove before the jury the testimony of David Hughes, given on the trial before the examining court. It was shown that Hughes testified before the examining court that the defendant was present, and had opportunity to cross examine, that Hughes did not live in this State, was a resident of Missouri, and that it was not probable that his attendance could be procured. His testimony had been taken down in writing by a witness who was present at the examining court. This witness identified the writing which he had made at the request of the examining magistrate, and testified that it was a correct statement of the testimony of Hughes, and contained the substance of all his testimony given at the trial. The presiding judge thereupon allowed it to be read to the jury. Counsel admit that it was proper to prove the testimony of a witness who is beyond the jurisdiction of the court, when a proper foundation has been laid; but they contend that it was not proper to introduce this statement as evidence. We admit that of itself the writing was of no probative force, and that, even had it been made by the magistrate, it would not of itself have been competent evidence. *Payne* v. *State,* 66 Ark. 545. But the testimony of this absent witness might have been proved by any one who heard him testify and could remember the testimony. And when a person who heard him testify reduced the testimony of the witness to writing at the time of the trial, and knows that it contained the substance of all his testimony, he may be allowed to refresh his memory by looking at the writing. When the

testimony is too long for the witness to repeat accurately, but he is able to testify that the writing is an accurate statement of it, he may read the writing to the jury as his testimony of what the absent witness testified on the former trial. *Wilkins* v. *State,* 68 Ark. 441. There are many cases which hold that this may be done, even though the witness has no present recollection of the former testimony, if he knows that the writing was made by him at the time of the former trial, and that it is a correct statement of the testimony of the absent witness. The weight of authority seems to support that view. 16 Cyc. 1106. The testimony goes to the jury for their consideration, and may be contradicted by the testimony of any other witness who was present at the former trial and heard the testimony. Now, in this case, the witness who attended the former trial and took down the testimony of the absent witness, not only identified the writing, but, after examination of it, testified from the writing and from his present recollection that it was a correct statement of the testimony of the former witness, though, on account of its length, he was doubtless unable to repeat the testimony accurately without the aid of the writing. Under these circumstances we do not think the court erred in allowing this writing to be read as a part of the testimony of the witness. Though the bill of exceptions is not quite clear on this point, after considering it, we think this is what was done in the trial court, for the presiding judge refused to allow the writing to be read to the jury until witness had testified that he made it on the former trial, and that it was a correct statement of the testimony of the absent witness, and contained the substance of all the testimony given by such witness. The contention of appellant on this point must therefore be overruled.

Neither can we sustain the further contention that the defendant was surprised by this and other evidence on the part of the State. The general rule is that the doctrine of surprise does not apply to the testimony of witnesses of the opposite party, nor to evidence introduced by such party, when the same tends to support the issues joined and is such as might reasonably have been anticipated. Hughes testified before the examining magistrate; and as his testimony was material, defendant should have anticipated that, if Hughes was absent from the State, his former testimony would be proved.

Lastly, it is contended with much earnestness that the evidence was not sufficient to justify a verdict of murder in either degree. It seems to us very clear that this was not a premeditated, deliberate killing. It was the result of a sudden quarrel between the defendant and Pursur. But there was evidence that the defendant, angered by some indecent language used towards him by Pursur, commenced the assault upon him with a knife, and that Pursur only used the chair in an endeavor to protect himself. On the other hand, there was evidence tending to show that the affray was commenced by Pursur's striking the defendant with a chair. The jury evidently found that the defendant commenced the assault; and, although this assault was provoked by indecent language of Pursur, still provocation caused by words only is not sufficient to reduce a homicide ·from murder to manslaughter, *Vance* v. *State,* 70 Ark. 272. There is a conflict of evidence, and the finding of the jury as to the grade of the offense must stand. But, taking the whole evidence together, we are well convinced that this is not a very aggravated case of murder. It was done under heat of passion caused by very provoking language on the part of Pursur, and under circumstances which in our opinion show that the punishment assessed by the jury is excessive. While passion created by words only does not reduce a homicide from murder to manslaughter, still such provocation may well be considered in assessing the amount of punishment, and we believe, in view of all the evidence, that justice will be best subserved by reducing the punishment to five years' imprisonment in the penitentiary.

With that modification the judgment will·be affirmed.