BOOTH v. ST. LOUIS SOUTHWESTERN RAILWAY COMPANY.

Opinion delivered March 22, 1926.

1. APPEAL AND ERROR—NECESSITY OF BILL OF EXCEPTIONS.—Error in giving or modifying an instruction cannot be brought into the record by recital in the motion for new trial; the court's action must appear in the bill of exceptions.

2. EVIDENCE—ADMISSIBILITY OF WRITING.—Where a witness for defendant testified that plaintiff made a certain statement in the nature of an admission, which witness immediately reduced to writing, the statement was admissible, though plaintiff at the time refused to sign it, and at the trial denied having made it.

Appeal from Columbia Circuit Court; L. S. Britt, Judge; affirmed.

Wade Kitchens, for appellant.

J. R. Turney, T. J. Gaughan, J. T. Sifford, J. E. Gaughan and E. E. Godwin, for appellee.

SMITH, J. Appellant, who was the plaintiff below, sued the appellee railway company to recover damages to compensate a personal injury sustained by himself, and also for damages to a wagon which he was driving at the time of his injury. At the trial there was a verdict and judgment for the defendant, and the plaintiff has appealed.

On August 9, 1923, plaintiff was hauling wood with a wagon and team of mules, and he undertook to drive across the railroad at a place where there were three tracks. There was a slight embankment on both sides of the crossing, and the railroad tracks are located in a shallow cut. The wagon had no brakes, nor were the mules harnessed with breeching, and they were therefore unable to hold the wagon back as it rolled down the incline to cross the railroad tracks, and as the wagon rolled down this incline the top hamestring on the right mule broke, on account of the weight of the wagon pressing forward, and the team was unable to stop the wagon until it ran on to the track. A train was switching at the time, and it is the theory of appellee that appellant never stopped his team, or attempted to do so, until he had reached a point on the incline beyond the track known

as the house track, where the cars were being switched, and that the rear end of the wagon passed far enough beyond this track to clear the cars, when appellant permitted the wagon to suddenly run backward down the incline until the rear end of the wagon would not clear the cars which were being switched on that track.

It was appellant's theory that, because of the broken hamestring, only one of the mules could pull, and that his wagon stalled, and, while he was trying to help the harnessed mule to pull the wagon out of danger, the train ran into the wagon and inflicted the injury to him and 'the damage to his wagon for which he sues.

It was the theory of appellant that a proper lookout was not being kept, and that the collision would have been averted, had this been done. It was the theory of appellee that a proper lookout was being kept, and that the collision was caused by the wagon rolling backwards after it had reached a place of safety.

The court gave numerous instructions at the request of both parties, and, without reviewing these instructions, it may be said that they present full and accurate declarations of the law as applied to the respective theories of the case.

As will appear from the above statement of the case, the comparative negligence of the parties became an issue, and on this issue an instruction was given which, after stating hypothetically appellant's theory of the case, concluded with this declaration of law: "and if such negligence directly caused the injury of the plaintiff, your verdict will be for the plaintiff, unless you find that the plaintiff himself was guilty of contributory negligence equal to or greater in degree than the negligence of defendant."

It is insisted that the court erred in striking from this instruction, following the words, "and if such negligence directly caused the injury," the phrase, "or contributed thereto."

An inspection of the bill of exceptions shows that the instruction was given as requested, and does not show

any modification thereof by the court. We need not therefore consider whether the omission of this phrase was erroneous. It is true that in the motion for a new trial it is recited that the court modified the instruction as requested by striking therefrom the phrase "or contributed thereto," but error in giving an instruction cannot be brought into the record by any recital contained in the motion for a new trial. The court's action and the ruling thereon must appear in the bill of .exceptions itself. *DeQueen & E. R. Co.* v. *Pigue,* 135 Ark. 499.

Exceptions were properly saved to the refusal to give certain instructions asked by appellant. But these appear to have been fully and properly covered by other instructions which were given. These instructions related to very familiar principles, and no useful purpose would be served by a discussion of them.

An exception was also saved to the giving of a certain instruction at the request of appellee upon the ground that it was abstract, but we do not concur in that view.

The most serious question in the case, and the one upon which appellant apparently relies for a reversal of the judgment of the court below, arose over the admission in evidence of a statement alleged to have been made by appellant to W. F. Woodard, a claim agent of the defendant railway company, some time after the collision. This statement was in the nature of a declaration against interest, and tended to contradict the testimony given by appellant at the trial. The evidence in regard to this statement is in irreconcilable conflict. Appellant testified that he was called upon by Woodard and asked for a statement. That Woodard went to the depot of the company at Waldo, and commenced writing on a typewriter what purported to be a statement as to the circumstances of the collision. Appellant stated that his answers were not being written down as he made them, and he asked if he would be given a copy of the statement, and when Woodard told him that he would not, he refused to sign the statement or to assent that it recited the facts.

Appellant objected to the admission of this state-
ment in evidence for any purpose when it was first
offered in evidence by Woodard, when the latter was
called as a witness for appellee. Woodard testified that
he called upon appellant for a statement of the facts,
and, after discussing the matter for some time, they went
to the depot, where a typewriter could be found, to reduce
the statement to writing, and that he wrote correctly the
answers which appellant made to his questions, and that,
after the statement had been reduced to writing, it was
read over to appellant, who also examined it himself and
said it was correct, but appellant refused to sign it, for
the reason, then stated, that his attorney had told him
not to sign any statement. Woodard testified that, after
the statement had been assented to by appellant as being
correct, although appellant refused to sign it, he then
wrote at the bottom thereof the words, ''Refused to
sign,'' and called three persons, who were present, to
witness the statement. The persons who signed the
statement as witnesses were called as witnesses in the
case, and their testimony substantially corroborates
that of Woodard.

It may be conceded that the statement, of itself, has
no probative value, but we think its admission in evi-
dence was not erroneous. According to the witnesses
for appellee, it contained the statements made by appel-
lant at the time, and might have been used by these wit-
nesses to refresh their recollection as to what appel-
lant's statements were. Without this paper the wit-
nesses could have testified what their recollection was as
to what appellant had said. There was a question whether
appellant had made the statements contained in the writ-
ing, but this was, of course, a question for the jury.

A very similar question arose in the case of *Petty v.
State,* 76 Ark. 515. In that case a witness named Hughes
had testified in the examining trial before a justice of the
peace. Hughes' testimony was taken down in writing
by a witness who was present at the examining court, and
this witness testified that it was a correct statement of

the testimony of Hughes and contained the substance of
all his testimony given at the trial.   The presiding judge
allowed the statement to be read to the jury, and the
defendant duly excepted.   This testimony was held to
have been properly admitted upon the appeal to this
court.   The reasoning of the court, as expressed by Mr.
Justice RIDDICK, is so entirely in point that we quote at
length from what was there said:   ''Counsel admit that
it was proper to prove the testimony of a witness who is
beyond the jurisdiction of the court, when a proper foun-
dation has been laid; but they contend that it was not
proper to introduce this statement as evidence.  We admit
that of itself the writing was of no probative force, and
that, even if it had been made by the magistrate, it would
not of itself have been competent evidence.   *Payne* v.
*State,* 66 Ark. 545.   But the testimony of this absent
witness might have been proved by any one who heard
him testify, and could remember the testimony.   And
when a person who heard him testify reduced the testi-
mony of the witness to writing at the time of the trial,
and knows that it contained the substance of all his testi-
mony, he may be allowed to refresh his memory by look-
ing at the writing.   When the testimony is too long for
the witness to repeat accurately, but he is able to testify
that the writing is an accurate statement of it, he may
read the writing to the jury as his testimony of what the
absent witness testified on the former trial.   *Wilkins* v.
*State,* 68 Ark. 441.   There are many cases which hold
that this may be done, even though the witness has no
present recollection of the former testimony, if he knows
that the writing was made by him at the time of the
former trial, and that it is a correct statement of the tes-
timony of the absent witness.   The weight of authority
seems to support that view.   16 Cyc. 1106.   The testi-
mony goes to the jury for their consideration, and may
be contradicted by the testimony of any other witness
who was present at the former trial and heard the testi-
mony.   Now, in this case, the witness who attended the
former trial and took down the testimony of the absent

witness, not only identified the writing, but, after examination of it, testified from the writing and from his present recollection that it was a correct statement of the testimony of the former witness, though, on account of its length, he was doubtless unable to repeat the testimony accurately without the aid·of the writing. Under these circumstances we do not think the court erred in allowing this writing to be read as a part of the testimony of the witness." See also 4 Wigmore on Evidence, § 2134.

We conclude therefore that no error was committed in permitting the introduction of this statement in evidence.

Upon a consideration of the whole case, we find no error prejudicial to the appellant, so the judgment of the court below must be affirmed, and it is so ordered.