WALKER *v*. STATE.

Opinion delivered April 29, 1912.

1. DISTURBING RELIGIOUS CONGREGATION—INTENT.—If the natural tendency of an act is to disturb a congregation, and it does in fact disturb it, an intention to disturb it is not a necessary element of the crime. (Page 340.)

2.  SAME—INTENT.—Kirby's Digest, § 1655, provides that if any person shall maliciously or contemptiously disturb or disquiet any congregation assembled in any church for religious worship, etc., he shall on conviction, be fined, etc. *Held* that the words "malicious," and contemptuous" refer to the manner of disturbance, and not to the extent with which the disturbance was done. (Page 340.)

3.  SAME—EFFECT OF DISTURBING MEMBER.—A disturbance of a single member of a congregation assembled for religious worship is in contemplation of law a disturbance of the congregation. (Page 341.)

Appeal from Lawrence Circuit Court; Western District; *R. E. Jeffery*, Judge; affirmed.

### STATEMENT BY THE COURT.

The appellant was convicted under section 1655 of Kirby's Digest of the crime of disturbing a religious congregation. The indictment charged that he "did unlawfully and contemptuously disturb and disquiet a congregation assembled for religious worship at Christian Church at Opposition, by loud talking and by acting in a manner that was calculated to disquiet, insult and interrupt said congregation," etc.

It appears that a stepdaughter of Walker had joined the Christian Church at Opposition, and was to be baptized in the evening after services. Walker went to the church that evening, and told the preacher that he desired to make a statement concerning the baptism of his stepdaughter. The preacher granted him permission, and Walker stated that he and her mother objected to her being baptized; that her health was not in any condition; that they feared that she could not stand the ordeal; that she had been troubled with heart trouble some year or so before, and on that account they would prefer that they would not baptize her. Walker told them to get a doctor, and if the doctor thought she could stand the baptism that they could go ahead and baptize her. Then he proceeded to say, "You people never refer to the woman in the passage of Scripture where she committed adultery; and came to Christ for pardon, and her persecutors said, 'This woman was caught in the very act of adultery.' " He further said: "You people never do talk on such subjects as that, where the woman was told to go and sin no more, and she was caught in the very act of adultery."

After Walker sat down, the minister in charge called the

attention of the congregation to the fact that he the evening before had treated on the subject Mr. Walker spoke about. When the preacher spoke to the congregation, Walker got up and wanted another reply. The minister went on. Walker said that "we weren't any doctors" and that "if we went ahead and baptized his stepdaughter and she died in the attempt or in the act, he and her mother would hold the congregation responsible as murderers;" and he further said: "As long as you pray and go on like this, you are just making your way to hell as fast as you can."

The witness said Walker spoke in a boisterous manner. "He was nearly crazy; he was mad." At the time a woman fainted in the congregation, and they took her out. The whole congregation was disturbed. The witness stated that he was a member of the congregation, and Walker's boisterous manner and conversation disturbed him.

Witness further stated that he thought from Walker's motions and actions that he was looking for a club; his actions showed he was looking for something.

The testimony of the appellant himself tended to show that his stepdaughter had heart failure three or four times since they had lived in the neighborhood, and that he and his wife thought at one time that she could not recover; that her mother thought that it was dangerous for her to go through the ordeal of being baptized; that they tried to keep the girl from going the second night, but that she said that she had promised to go, and she did go. He stated that he acted as he did because of the girl's health. He said what he did as mild as he could. He denied looking around for a club; said he was looking for his hat; that he couldn't find it until after the meeting was over. He disclaimed having any intention whatever of disturbing the congregation, but claimed that his sole purpose was to prevent the baptism of his stepdaughter because of the condition of her health. He stated that he had spoken to the preacher before he went to church, and asked him for the privilege of speaking there that night, and that the preacher granted it.

The court, in its instructions, told the jury that if they believed from the evidence, beyond a reasonable doubt, that Walker did unlawfully and contemptuously disturb and dis-

quiet a congregation assembled for religious worship, as charged in the indictment, by loud talking and acting in a manner that was then and there calculated to disturb, interrupt and disquiet the congregation, they would be authorized to find him guilty. On the contrary, if they did not so find, they would acquit him. The court further told the jury that if any one person of the congregation assembled for religious worship was disturbed, that, in contemplation of law, was a disturbance of a religious congregation.

The appellant asked the court to instruct the jury as follows: "You are instructed that if you find from the evidence in this case that the defendant Walker went to the church where it is alleged that he disturbed a religious congregation; asked permission of the minister in charge of the services that he be given permission to explain to the members of the church why his daughter should not be baptized, that the minister gave him this permission; and that, having the same, he proceeded to give the reasons why she should not be baptized, having at the time no intention to disturb the congregation, then you will be warranted in finding for the defendant, notwithstanding the fact may appear from the the evidence that the defendant may have become seemingly boisterous in manner and language in making the explanation and arguing the question at issue with the minister, which may or may not have disturbed the congregation or one or more of its members."

The court refused the prayer, and appellant excepted. Appellant has duly prosecuted his appeal.

*George G. Dent,* for appellant.

1. The verdict was contrary to law. (a) There was no intent to disturb the congregation. 5 Tex. App. 470; 11 *Id.* 388. An evil intent must be charged and proved. Cyc. 548. (b) The evidence shows the sole motive to be to protect his daughter's health.

2. There was error in the charge to the jury in ignoring the theory of the defense.

*Hal L. Norwood,* Attorney General, and *Wm. H. Rector,* Assistant, for appellee.

No intent to disturb is necessary, only proof of facts *calculated* to disturb or actual disturbance is requisite. 41 Ark. 410; 14 Cyc. 543; 133 Ala. 613; 99 *Id*. 207; 8 Sea. (Tenn.) 563; 92 Ala. 82; 53 *Id*. 398; 87 *Id*. 48.

Attempting to reply to a minister when requested to desist is punishable. 78 N. C. 448. See 5 Tex. App. 473.

WOOD, J., (after stating the facts.) The court did not err in refusing appellant's prayer for instruction.

While the law looks alone to the motive in this offense, and while it is necessary that the conduct of the accused shall be actuated by malice, or a contempt for the congregation of worshipers assembled, or the worship itself, yet it is not essential that the accused should have the specific intent to disturb the congregation in order to constitute the offense. The doctrine concerning this offense is stated in 14 Cyc. p. 543, as follows:

"If the natural tendency of an act is to disturb a meeting and it does in fact disturb it, an intention to disturb is not a necessary factor in the crime. It is sufficient if the act itself was done intentionally, since in such a case the law presumes the intention to disturb the meeting, and the presumption can not be rebutted by proof of a secret intention not to interrupt the assembly." See also cases cited in note.

In *Richardson* v. *State*, 5 Tex. App. 473, the court says: "To constitute the offense, there must be a congregation assembled for religious worship, and that congregation, so assembled, must be disturbed, that is, agitated, roused from a state of repose, molested, interrupted, hindered, perplexed, disquieted, or turned aside or diverted from the object for which they are assembled; and the act which causes the disturbance must be wilfully done, that is, willingly, designedly, purposely, obstinately, or stubbornly done. These elements combining, the offense would be complete."

This was said under a statute which made it an offense for any one to "wilfully disturb any congregation assembled for religious worship."

It was only necessary, therefore, in this case to show that appellant maliciously or contemptuously acted in a way to disturb and disquiet the congregation assembled for religious worship. If his manner was calculated to disquiet, insult or

interrupt the congregation, and what he did was maliciously and contemptuously done, he was guilty, no matter whether he specifically intended to disturb the congregation or not. The words "malicious" and "contemptuous" refer to the manner of the disturbance.  See *State* v. *Booe*, 62 Ark. 512.

A disturbance of a single member of a congregation assembled for religious worship, in contemplation of law, is a disturbance of the congregation.  *State* v. *Wright*, 41 Ark. 410.

Under the evidence in this case, it was a question for the jury to determine whether appellant's conduct on the occasion mentioned was an offense under section 1655 of Kirby's Digest.

There was no error in the rulings of the court, and the judgment is affirmed.