JOE NEAL ET UX v. THE HONORABLE J. E. STILL, MUNICIPAL JUDGE

5-5268                                    455 S. W. 2d 921

Opinion delivered June 22, 1970

*Rose, Barron, Nash, Williams, Carroll & Clay,* By: James Guy Tucker, Jr., for appellants.

No brief filed for appellee.

LYLE BROWN, Justice. Joe Neal and wife were formally charged, tried, and convicted in the Arkadelphia Municipal Court with willfully violating Ark. Stat. Ann. § 41-1431 (Repl. 1964), titled "Creating Disturbance on School Property." The charges stemmed from their activities on the campus of Henderson State College. The pertinent point on appeal here is that the statute is unconstitutional.

An appeal to the circuit court was not perfected. Appellants filed in that court a petition which named the municipal judge, Hon. J. E. Still, as the respondent. The petition was styled, "Petition for Certiorari, Petition for Writ of Coram Nobis, and Petition for Writ of Prohibition." The circuit court granted the petition for certiorari and after deleting that part of the sentence which was admittedly objectionable, denied any other relief. That amendment left each appellant with a fine of $500. The part of § 41-1431 which is relevant to this appeal reads:

> Any person who shall enter upon any public school-property, school cafeteria, . . . in the State of Arkansas, and while therein or thereon shall create a disturbance, or a breach of the peace, in any way whatsoever, including, but not restricted to, loud and offensive talk, the making of threats or attempting to intimidate, or any other conduct which causes a disturbance or breach of the peace or threatened breach of the peace, shall be guilty of a misdemeanor, and upon conviction thereof shall be fined not more than five hundred dollars ($500.00) or imprisoned in jail not more than six [6] months, or both such fine and imprisonment.

Appellants contend the statute is "void in that it is vague and overbroad in violation of the fourteenth amendment and productive of a chilling effect on the exercise of rights protected by the first amendment to the Constitution of the United States."

A legislative act is unconstitutionally vague which imposes criminal sanction for the doing of- an act, and that act is so nebulously described as to require men of common intelligence to guess at its meaning. *Winters* v. *New York*, 333 U. S. 507 (1948). We presume an act of the Legislature to be constitutional and must so hold unless it is clearly incompatible with the Constitution; any doubt is resolved in favor of constitutionality. *Walden* v. *Hart*, 243 Ark. 650, 420 -S. W. 2d. 868 (1967). In light of the stated principles we examine and resolve appellants' contention.

It is difficult to conceive of language more vague than that which declares one a law violator when he "creates" a disturbance or breach of the peace "in any way- whatsoever." The same is true of language which makes it a misdemeanor to use "offensive talk." Then we find a prohibition against "attempting to intimidate," which is about as vague as one can imagine. Finally, we find in the forbidden category "any other conduct which causes a . . . *threatened* breach of the peace." We have no hesitancy in concluding that men of common intelligence would have to guess as to what conduct is proscribed by those phrases.

The United States Supreme Court has considered, and unfavorably, a host of cases involving phraseology similar to that with which we are concerned. In *Ashton* v. *Kentucky*, 384 U. S. 195 (1966), there was a conviction for an offense described as "any writing calculated to create disturbances of the peace." The Court held that language to be so indefinite and uncertain as to be unconstitutionally vague. In *Cantwell* v. *Connecticut*, 310 U. S. 296 (1940), the charge of "inciting a breach of the peace" was condemned as being of general and indefinite character. In *Terminello* v. *Chicago*, 337 U. S. 1 (1949), an ordinance which as construed punished an utterance as a breach of the peace "if it stirs the public to anger, invites dispute, brings about a condition of unrest, or creates a disturbance." It was held unconstitutional. For other cases in which convictions for breaches of the peace were reversed because

the offenses were imprecisely defined, see *Edwards* v. *South Carolina,* 372 U. S. 229 (1963), and *Cox* v. *Louisiana,* 379 U. S. 536 (1965). In *Ashton* the Court said:

> "Here . . . we deal with First Amendment rights. Vague laws in any area suffer a constitutional infirmity. When First Amendment rights are involved, we look even more closely lest, under the guise of regulating conduct that is reachable by the police power, freedom of speech or of the press suffer."

The indefiniteness of penal laws is the subject of a recent annotation in 16 L. Ed. 2d, p. 1231.

This brings us to the question of whether the entire § 41-1431 must fall because of the unconstitutionally vague portions. The different parts of the section are so mutually connected and interwoven as to lead us to believe that the Legislature intended them as a whole. The entire section consists of one sentence. In fact, when the impermissive words and phrases are deleted there remains hardly a skeletal sketch of a section with which to deal. We are further persuaded in that view because any permissible portions of the section are duplicated in misdemeanor statutes of long standing.

It is our conclusion that § 41-1431 should be, and is hereby, declared unconstitutional in its entirety.

Reversed and dismissed.

FOGLEMAN AND JONES, JJ., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. I respectfully dissent. We should consider this case only in light of the record before us. Appellants did not avail themselves of their right to appeal to the circuit court and have a trial de novo, where there would have been a full record of all proceedings. Instead, they filed a petition for certiorari, writ of error coram nobis, and

prohibition. The response to that petition certainly controverts appellants' statements about the incidents leading to their arrest and conviction. Consequently, we may only review the face of the record. The charge upon which appellants were accused and convicted was:

> Comes the undersigned, Deputy Prosecuting Attorney within and for Clark County, Arkansas, and in the name and by the authority of the State of Arkansas, accuses of the crime of creating a disturbance upon a school campus or grounds committed as follows, to-wit: The said defendant in the County and State aforesaid on the 21 day of February, 1969, then and there did unlawfully and willfully create a disturbance in the Student Union Building of H. S. C. by the use of loud and offensive language and by distributing offensive literature designed to incite the emotions of the students of said campus, in violation of Ark. Statutes Section 41-1431 against the peace and dignity of the State of Arkansas.

This charge seems to me to be clearly within the purview of the act. In approaching an analysis of the act, we should carefully examine what is prohibited. As I read it, the act does not prohibit any of the enumerated specific conduct unless it *creates* a disturbance or a breach of the peace. The gist of the offense is the actual creation of a disturbance or a breach of the peace. The words "in any way whatsoever, including, but not restricted to, loud and offensive talk, the making of threats or attempting to intimidate, or any other conduct which causes a disturbance of the peace or breach of the peace or threatened breach of the peace" are merely descriptive of conduct which may or may not result in a breach of the peace.

This eliminates from consideration such a case as *Ashton* v. *Kentucky,* 384 U. S. 195, 86 S. Ct. 1407, 16 L. Ed. 2d 469 (1966), where the vague language was

"any writing calculated to create disturbances of the peace, corrupt the public morals or lead to any act, which, when done, is indictable." That opinion also referred to decisions holding statutes making offenses of conduct "calculated to create disturbances" unconstitutionally vague. This element of uncertainty is eliminated from the statute before us.

As a matter of fact I cannot see that any of the authorities cited by the majority mandates the action taken. A thought which should be uppermost in considering the particular question we have before us is that every reasonable presumption must be indulged and all doubts resolved in favor of the constitutional validity of an act of the General Assembly, to the extent that when one construction would make it void for conflict with constitutional provisions and another would make it valid, the latter will be adopted, even though the former is otherwise the more natural interpretation. *Waterman* v. *Hawkins,* 75 Ark. 120, 86 S. W. 844; *State* v. *Moore,* 76 Ark. 197, 88 S. W. 881; *State* v. *Taylor,* 186 Ark. 554, 55 S. W. 2d 80; *Black* v. *Cockrill, Judge,* 239 Ark. 367, 389 S. W. 2d 881. The construction given an act by state courts has been given primary consideration by the United States Supreme Court. I submit that a construction limiting the offense to conduct which causes a disturbance of the peace or breach of the peace[1] as suggested hereinabove meets constitutional standards.

The words breach of the peace have a commonly accepted meaning. It is set out at 11 C. J. S. 817, Breach of the Peace, § 1, as follows:

The term "breach of the peace" is generic, and includes all violations of the public peace or order, or decorum; in other words, it signifies the offense of disturbing the public peace or tranquillity enjoyed by the citizens of a community; a disturbance of the public tranquillity by any act

---

[1]These are synonymous terms. See, e. g., *People* v. *Anderson,* 117 Cal. App. 763, 1 P. 2d 64 (1931).

or conduct inciting to violence - or tending to provoke or excite others to break the peace; a disturbance of public order by an act of violence, or which, by causing consternation and alarm, disturbs the peace and quiet of the community. The word "peace," as used in this connection, means the tranquillity enjoyed by the citizens of a municipality or a community where good order reigns among its members.

The inhibitions of *Cantwell* v. *Connecticut*, 310 U. S. 296, 60 S. Ct. 900, 84 L. Ed. 1213 (1940), do not reach this statute. There, the particular acts involved were held not to have amounted to a breach of the peace. The court emphasized the fact that there was no showing that Cantwell's conduct was *noisy*, truculent, overbearing or *offensive*. I find language in that opinion appropriate here:

The offense known as breach of the peace embraces a great variety of conduct destroying or menacing public order and tranquillity. It includes not only violent acts but acts and words likely to produce violence in others. No one would have the hardihood to suggest that the principle of freedom of speech sanctions incitement to riot or that religious liberty connotes the privilege to exhort others to physical attack upon those belonging to another sect. When clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order, appears, the power of the State to prevent or punish is obvious.

\* \* \* The sound of the phonograph is not shown to have disturbed residents of the street, to have drawn a crowd, or to have impeded traffic.

\* \* \*

The essential characteristic of these liberties is, that under their shield many types of life, char-

acter, opinion and belief can develop unmolested and unobstructed. Nowhere is this shield more necessary than in our own country for a people composed of many races and of many creeds. There are limits to the exercise of these liberties. The danger in these times from the coercive activities of those who in the delusion of racial or religious conceit would incite violence and breaches of the peace in order to deprive others of their equal right to the exercise of their liberties, is emphasized by events familiar to all. These and other transgressions of those limits the States appropriately may punish.

In *Terminiello* v. *Chicago,* 337 U. S. 1, 69 S. Ct. 894, 93 L. Ed. 1131 (1948), the trial court instructed the jury that the words "breach of the peace" included speech which "stirs the public to anger, invites dispute, brings about a condition of unrest or creates a disturbance." Reversal there resulted because the ordinance, as construed by the instruction and approved by the state courts, permitted Terminello's conviction, not just for- speech which created a disturbance, but for speech which *only* stirred people to anger, invited public dispute or brought about a condition of unrest. It was recognized in that opinion that freedom of speech is protected against censorship or punishment, *"unless shown likely to produce a clear and present danger of a serious substantive evil that rises for above public convenience, annoyance or unrest."*

In *Edwards* v. *South Carolina,* 372 U. S. 229, 83 S. Ct. 680, 9 L. Ed. 2d 697 (1963), the court said that the -petitioners were convicted upon evidence which showed no more than that the opinions which they were peaceably expressing were sufficiently opposed to the view of the majority of the community to attract a crowd and necessitate police action. The court said that the courts of South Carolina, which had construed the offense as "not susceptible of exact definition," permitted conviction for speech which "stirred people

to anger, invited public dispute or brought about a condition of unrest," citing *Terminiello.*

In *Cox* v. *Louisiana,* 379 U. S. 536, 85 S. Ct. 453, 13 L. Ed. 2d 471 (1965), the statute was found unconstitutionally vague and-overbroad only because it prohibited "congregating with others with intent to provoke a breach of the peace or under circumstances such that a breach of the peace may be occasioned." The reason for holding it unconstitutional was the Louisiana court's defining of "breach of the peace" as "to agitate, to arouse from a state of repose, to molest, to interrupt, to hinder, to disquiet."

In both *Edwards* and *Cox* the United States Supreme Court recognized that the situations prevailing in those cases were far different from that in *Feiner* v. *New York,* 340 U. S. 315, 71 S. Ct. 303, 95 L. Ed. 267 (1951). I say that *Feiner* constitutes authority for holding our statute constitutional. In *Feiner* the court found the first paragraph quoted from *Cantwell* above applicable and appropriate.

Appellant's contention that the statute requires neither knowledge nor intent as an element of the crime is answered in *Briggs* v. *State,* 236 Ark. 596, 367 S. W. 2d 750, vacated on other grounds sub nom, *Hamm* v. *City of Rock Hill,* 379 U. S. 306, 85 S. Ct. 384, -13 L. Ed. 2d 300 (1964). In the statute before us the key word is "create." The term "creation of a disturbance, breach of the peace or threatened breach of the peace" embodies intentional and willful activity. We have held that if the natural tendency of an act is to cause a disturbance, the intent to disturb is not a necessary element of the offense. *Walker* v. *State,* 103 Ark. 336, 146 S. W. 862.

If the statute is limited as I suggest at the outset, I have no trouble with the meaning of such terms as "loud and offensive talk," "threatened breach of the peace" or "attempting to intimidate." I think there should be no difficulty on the part of the actor or

the victim in ascertaining whether there was an attempt to intimidate.

I would affirm the judgment of the circuit court.

Jones, J., joins in this dissent.