The Honorable Stanley Russ The Honorable John Miller Co-Chairmen, Special Language Subcommittee of the Joint Budget Committee State Capitol, Room 315 Little Rock, AR 72201
Dear Senator Russ and Representative Miller:
This is in response to your request for an opinion on the constitutionality of the State providing a residence to certain constitutional officers at no charge during the official's term of office. The proposed language that you have submitted for my review would provide the residence to those officials who maintain permanent residences outside of Pulaski County. The proposal would apply to the Governor, Attorney General, Secretary of State, Treasurer of State, Auditor of State, Land Commissioner, Lieutenant Governor, President Pro Tempore of the Senate and Speaker of the House of Representatives.
Your question presents an issue of first impression, requiring interpretation of the unique language of the Arkansas Constitution contained in a recently enacted amendment that was referred to the voters by the General Assembly. See 1992 Amendment No. 1 (not yet codified). This amendment (referred to herein as "Amendment 1") became effective, according to its terms, on January 1, 1993. The pertinent language is contained in Section 1, which states as follows:
 SECTION 1. (a) No official of the Executive Department shall be reimbursed by the State of Arkansas for any expenses except those reasonably connected to their official duties and only if such reimbursement is made for documented expenses actually incurred and from the regular budget appropriated for the official's office. Such restrictions on expense reimbursement are of a general application and also are intended specifically to prohibit the appropriation and use of public relations funds. The annual salaries of the Executive Department, which shall be paid in monthly installments, shall be as follows: the Governor, the sum of $60,000; the Lieutenant Governor, the sum of $29,000; the Secretary of State, the sum of $37,500; the Treasurer of State, the sum of $37,000; the Attorney General, the sum of $50,000; the Commissioner of State Lands, the sum of $37,500; the Auditor of State, the sum of $37,500. Except as provided herein, such officials of the Executive Department shall not receive any other income from the State of Arkansas, whether in the form of salaries or expenses.
 (b) The members of the General Assembly shall receive as their annual salary the sum of $12,500, except the President Pro Tempore of the Senate and the Speaker of the House of Representatives, who shall each receive the sum of $14,000 annually, with such salaries to be payable in equal monthly installments. Except as provided herein, no member of the General Assembly shall receive any other income for service in the General Assembly, whether in the form of salaries or expenses, including, but not limited to, public relations funds. Provided further, that no member of the General Assembly shall be entitled to per diem unless authorized by law, or to reimbursement for expenses or mileage unless authorized by law, documented, and reasonably related to their official duties.
No Arkansas court has had occasion to review this newly adopted amendment and no authority has been found from any jurisdiction interpreting closely similar language to that in Amendment 1. In this circumstance, only a judicial ruling can provide a conclusive resolution to your question.
Nonetheless, my review discloses several factors likely to be considered by a court and which may be helpful to your deliberations in this matter.
Amendment 1 forbids any other "income" being paid to the officers in question ". . . whether in the form of salary or expenses." The controlling question here revolves around the definition of income and what provisions of necessary expenses might be allowable under that definition.
It would seem sensible to assume that not all expenses of operating a constitutional office are contemplated to be borne by an officer out of his personal compensation. If, for example, the Governor travels to Washington to testify before Congress on matters of great import to this state, it would be unreasonable to suggest that Amendment 1 forbids addition to the Governor's salary. The issue, it would seem, is a determination of what expenses might be paid to an officer of such a character of personal benefit that they are classifiable as "income" for the purposes of Amendment 1.
Probably the most restrictive test for what constitutes income is found in the Internal Revenue Code. A court faced with interpreting Amendment 1 would almost certainly have to at least consider the IRS definition. Section 119 of the Internal Revenue Code provides that the value of lodging furnished to an employee is excluded from gross income if furnished by or on behalf of an employer for the convenience of the employer. Treasury Regulations 1.119-1(b) interprets the Code to require the following three prong test which must be met to exclude lodging from gross income:
 1) The lodging is furnished for the convenience of the employer;
 2) The lodging is on the business premises of the employer, and
 3) The lodging must be accepted by the employee as a condition of his employment.
If a court determines that Amendment 1 intends that "income" be interpreted consistent with IRS definitions, the above test would have to be satisfied by any legislative enactment which seeks to provide lodging to any affected officer of the state.
It is by no means certain, however, that the drafters of Amendment 1 intended resort to IRS regulations for interpretive aid. It should be noted that Amendment 1 was drafted by the General Assembly and referred to the people.
It includes no reference to Internal Revenue Service guidelines or regulations as a standard for interpretation, whereas in providing by statute for their own expense reimbursement, the General Assembly specifically tied allowability to IRS definitions. See A.C.A. 10-2-212 and10-2-217 (Cum. Supp. 1991). It is therefore arguable that no mention was made of IRS standards because they were not intended to apply.
The Arkansas Supreme Court has also recognized that "income" can be used in contexts where its meaning differs from the tax collector's definition. The Court, in Cook, Commissioner of Revenues v. Walters Dry Goods Co., 212 Ark. 485,489, 206 S.W. 742 (1947) cited with approval the holding in State ex rel. v. Wisconsin Tax Commission,185 Wis. 525, 201 N.W. 764:
 It is well settled that in determining what deductions may be made in respect to inheritance and income taxes, the Legislature has very broad powers, and that "income" for purposes of taxation is not necessarily identical with "income" for other purposes.
While we have found no case in another jurisdiction which addresses constitutional limitations on "income" of state officers, similar provisions restricting "salary" increases have been held not to forbid housing allowances for judges who must sit in locations away from their actual residences. Manning, Commissioner of Finance v. Sims et al., 308 Ky. 587, 213 S.W.2d 577 (1948); McCoy v. Handlin,35 S.D. 487, 153 N.W. 361; State ex rel. Payne v. Reeves,44 S.D. 568, 184 N.W. 993.
The reasoning in the above cases is that the intent of providing an allowance to judges required to serve in one locale while living in another was not to increase the compensation of the judge, but to make him whole for real additional expense which would be incurred maintaining two residences.
If a legislative enactment providing lodging to certain officers covered by Amendment 1 were to be challenged, there is also a degree of deference afforded the legislative action. A legislative enactment will not be declared unconstitutional unless it is clearly at variance with the constitution. Baratti v. Koser Gin Co., 206 Ark. 813,177 S.W.2d 750 (1944). If it is possible for the courts to construe a statute so as to meet the test of constitutionality, they will do so. Taylor v. Finch,288 Ark. 50, 701 S.W.2d 377 (1986). All reasonable doubt must be resolved in favor of constitutionality. Neal v. Still,248 Ark. 1132, 455 S.W.2d 921 (1970). And it is well-settled that the party challenging the statute has the burden of proving that it is unconstitutional. Cozad v. State, 303 Ark. 137, 792 S.W.2d 606 (1990). Finally, although legislative interpretation of constitutional provisions is never binding on the courts, if there is any doubt or ambiguity, it is persuasive and entitled to some consideration. Mears v. Hall, 263 Ark. 827, 569 S.W.2d 91
(1978); Griffin v. Rhoton, 85 Ark. 89, 107 S.W. 380 (1907).
With regard to the Governor, there is little disagreement that the fair value of the mansion does not constitute "income." The Internal Revenue Service has issued a Revenue Ruling indicating that the fair rental value of a governor's official residence is excludable from gross income. See Rev. Rul. 75-540. Case precedent also supports the proposition that the provision of a residence for the state's chief executive does not circumvent a constitutional prohibition against additional compensation, based upon the unique demands of that office. See Fergus v. Russel,110 N.E. 130 (Ill. 1915); see also discussion in Okla Op. Att'y Gen. 83-18. It is unlikely, in my opinion, that a court would consider the value of an executive mansion to be income whether or not it chose to resort to IRS definitions.
In conclusion, I cannot say, with certainty, what definition of "income" a court will adopt for interpretation of Amendment 1. If the IRS definition controls, there will still be a factual determination required on a case-by-case basis analyzing the duties of each affected officer. There is, however, no requirement in this state that income always be defined according to IRS guidelines. The General Assembly could fashion public policy to define "income" more restrictively or less restrictively than the IRS. Because of the presumption of constitutionality accorded legislative enactments, it would not be unreasonable or unlikely that a court would find carefully circumscribed housing provided to certain state officials, maintaining permanent residence at a distance from the state capitol, not to be violative of Amendment 1.
The foregoing opinion, which I hereby approve, was prepared by Chief Deputy Attorney General Royce O. Griffin.
Sincerely,
WINSTON BRYANT Attorney General
WB/ROG/dv