HADLEY v. STATE.

Criminal 4090

Opinion delivered May 30, 1938.

*Jack Holt*, Attorney General, and *John P. Streepey*, Assistant, for appellee.

GRIFFIN SMITH, C. J. Appellant was convicted of the crime of false pretense and sentenced to serve 21 years in the penitentiary.

In the motion for a new trial two of the grounds assigned were (a) that the verdict was the result of prejudice and passion, and (b) that the court erred in permitting the prosecuting attorney, over objections of the defendant, to question the defendant in the presence of the jury as to former convictions, the prisons in which he served, the length of such sentences, and the time actually served under the sentences imposed.

On appeal no brief was filed by appellant.

Under § 3073 of Pope's Digest one convicted of obtaining money or property by false pretense is deemed guilty of larceny. By § 3134 of the Digest the punishment for larceny, where the value of the property stolen exceeds $10, is not less than one nor more than twenty-one years in the penitentiary.

Information filed by t h e prosecuting attorney charged that the defendant, on September 25, 1937, feloniously obtained property of the value of $50 from Jesse Rogers by representing that there was money in a bank of Oklahoma City to pay a check for $50 given by Hadley in payment for a gun purchased of Rogers, and that such representation was knowingly false. Appellant admitted issuing the check, but testified he told Rogers that if there wasn't money in the bank to meet the check, he would make it good by the time it got there. Rogers testified that appellant represented himself as an attorney of Oklahoma City—"He didn't say he had money in the bank, but he said the check was good. . . . He impressed that several times. . . . He also mentioned that he was a Shriner and showed me his pin, and that is one reason I let him have the gun. . . . The check was not paid."

Testimony was sufficient to submit to the jury the question of whether or not appellant obtained the gun by false representations.

Appellant traded the gun near Paris, Texas, for automobile tires.

On cross-examination appellant was interrogated about former felony convictions. He admitted he was convicted in Texas, in 1925, as Bob Morell and sentenced to serve two years, but was soon pardoned; that he was sentenced to serve five years in Oklahoma as W. W. Craig for making a defendant's bond and "giving the judge a check for it. . . . I had money in the bank, but not enough to cover it"; that in 1929 he was sentenced to serve three years in federal prison at Leavenworth, Kansas, "for using a government office for my own profit," and served nearly 33 months; also, that he went to the penitentiary in Oklahoma in 1927 as W. W. Craig, and served 27 months—in all, four sentences. Again, at Laredo, Texas, by agreement he accepted a two-year sentence for issuing a "cold" check.

With respect to each of the convictions admitted by appellant, the prosecuting attorney asked questions as to the nature of the crime, the length of time served under the sentences imposed, and developed other details.

Counsel for appellant objected when the prosecuting attorney asked whether the defendant had ever used the names "Walter W. Craig," and "Robert Morell." Also, there was an objection to the question: "How many times have you been convicted of a felony?" The court ruled that the witness would be required to answer, but that the answers would be considered only as going to credibility. Counsel for appellant then stated: "We object for any purpose."

Subsequent to these objections, the prosecuting attorney questioned the defendant as to the details mentioned *supra*. No objections were made to the collateral phases of the questions at the time they were propounded. The objections first appear in the motion for a new trial. They will, therefore, be regarded as having been waived, insofar as the rules of evidence are concerned.

It is next urged in the motion for a new trial that the verdict was the result of prejudice and passion. This is a conclusion drawn from the severity of the sentence.

In view of appellant's admitted checkered career and his aptitude for issuing worthless checks, the jury doubtless felt that it was time to curtail the errors which so frequently became an incident to the appellant's roving habits. But while the impulse which gave rise to the jury's actions may be understood in the light of appellant's leaning toward crime, such considerations cannot be permitted to convert the court's processes into an agency of vengefulness. Even if the law of this state does fix 21 years as a maximum penalty for larceny, it was not the intention of the lawmaking body that such maximum should be invoked except as punishment for reprehensible conduct in aggravation of the particular act. Cruel and unusual punishment are prohibited by our Constitution. It may well be said that if punishment has been fixed for a stated crime, and such legislative act is not declared unconstitutional, no sentence imposed thereunder can be regarded as cruel or unusual. The logic and applicability of such argument will be readily conceded.

Although objection was not made to the questions particularizing with respect to collateral matters incident to the felonies of which appellant had been formerly convicted, and for which he had served time, it is clear that such questions served to inflame the minds of jurors. Otherwise a sentence of 21 years would not have been imposed.

Section 2786 confers power upon the Supreme Court to reverse, affirm, or modify a judgment or order appealed from, in whole or in part, and as to any or all parties. The statute has been construed as applying to criminal as well as civil cases. *Vance* v. *State*, 70 Ark. 272, 68 S. W. 37; *Simpson* v. *State*, 56 Ark. 8, 19 S. W. 99; *Darden* v. *State*, 73 Ark. 315, 84 S. W. 507. In *Henson* v. *State*, 76 Ark. 267, 88 S. W. 965, it was said: "The majority of the judges are of the opinion that the punishment assessed against the appellant is excessive, and should be reduced to two years' imprisonment in the penitentiary, and it is ordered that the judgment therein be modified accordingly." See, also, *Davis* v. *State*,

155 Ark. 245, 244 S. W. 750. There are numerous instances in which this court has reduced punishment of an appellant from death to life imprisonment.

In the instant case we hold that the excessive verdict clearly shows passion and prejudice resulting from the collateral discussion of former crimes. The judgment will, therefore, be modified by reducing the punishment to two years in the penitentiary, and, as so modified, said judgment is affirmed.