Carl Albert COLLINS *v.* STATE of Arkansas

CR 75-110                                548 S.W. 2d 106

Opinion delivered March 7, 1977
(In Banc)

198

*John Barry Baker* and *Robert R. Estes,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Robert A. Newcomb,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. The judgment sentencing appellant Carl Albert Collins to death by electrocution under Act 438 of 1973 (Ark. Stat. Ann., Title 41, Chap. 47, Supp. 1973) was affirmed by this court on December 22, 1975. See *Collins* v. *State,* 259 Ark. 9, 531 S.W. 2d 13. Thereafter, petition for writ of certiorari for review of our judgment affirming the judgment of the Circuit Court of Washington County was filed in the Supreme Court of the United States. That court, on October 4, 1976, vacated our judgment, insofar as it left undisturbed the death penalty imposed, and ordered that this cause be remanded to this court for further consideration in light of *Gregg* v. *Georgia,* 428 U.S. 153, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976); *Proffitt* v. *Florida,* 428 U.S. 242, 96 S. Ct. 2960, 49 L. Ed. 2d 913 (1976); *Jurek* v. *Texas,* 428 U.S. 262, 96 S. Ct. 2950, 49 L. Ed. 2d 929 (1976); *Woodson and Waxton* v. *North Carolina,* 428 U.S. 280, 96 S. Ct. 2978, 49 L. Ed. 2d 944 (1976); and *Roberts* v. *Louisiana,* 428 U.S. 325, 96 S. Ct. 3001, 49 L. Ed. 2d 974 (1976). The mandate remanding the case was issued on November 16, 1976 and filed here on November 18, 1976.

Our consideration of the imposition of the death penalty in this case (the only part of our judgment that was vacated), in the light of these decisions, leads us to the same conclusions we reached when the case was previously considered, i.e., that the statute under which the death penalty was imposed is constitutional and valid; that the pertinent issues were properly submitted to the jury, whose verdict was sustained by the evidence; and that death by electrocution is

not unconstitutionally cruel. We adopt our earlier opinion in this case and reiterate all that we there said. Fundamentally, our present consideration is concerned with determining whether the death penalty statute under which appellant Collins was sentenced[1] falls within the constitutional perimeter discernible from the 1976 quintuplet offspring of *Furman* v. *Georgia*, 408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972).

Our review is not simplified by the same multiplicity of opinions in these cases that we found in *Furman;* however, our principal consideration must of necessity be directed toward the opinions of the Stewart-Powell-Stevens plurality (hereinafter referred to as the Stewart plurality) in *Gregg, Proffitt* and *Jurek*, because from our analysis, the participation of at least one member of this plurality was essential to the sustention of the death penalty in those three cases. In viewing the statute under which appellant was sentenced, we cannot forget, however, that these opinions are not majority opinions in any of the three cases. It is important that we keep in mind what the Stewart plurality does not say while tracing what it does say. Let us first note, however, certain definite conclusions we find from reading all the opinions in all the five cases in the light of which we are mandated to review our holding in this case. They are:

1. The death penalty is not per se cruel and unusual punishment prohibited by the Eighth Amendment to the United States Constitution.

2. Imposition of a death penalty pursuant to a law imposing a mandatory death penalty for a broad category of homicidal offenses constitutes cruel and unusual punishment prohibited by the Eighth Amendment.

3. Each distinct system permitting the imposition of the death penalty for a criminal offense must be examined to determine whether it violates Eighth Amendment

---

[1]This statute was substantially incorporated into the Arkansas Criminal Code of 1976. We point out some differences in an Appendix to this opinion. Although we find no significance in them, our evaluation in that respect is based upon a superficial examination, as the statute in its present state is not under review here.

prohibitions against cruel and unusual punishment.

4. The basic concern, expressed in *Furman* v. *Georgia*, supra, centered on defendants who were being condemned to death capriciously and arbitrarily.

5. Facially the procedures in Georgia, Florida and Texas satisfy the Eighth Amendment requirement. Those in North Carolina and Louisiana do not.

The Supreme Court of the United States did nothing more in the *Furman* offspring than consider each of the statutes of the five respondent states to determine whether the particular state afforded adequate safeguards against the capricious and freakish imposition of the death penalty. See *State* v. *Bayless*, 48 Ohio State 2d 73, 357 N.E. 2d 1035 (1976). Our analysis of our own procedures leads us to the conclusion that the death sentence was constitutionally imposed in this case.

We approach the consideration of the question before us mindful of the strong presumption of constitutionality appurtenant to every legislative enactment, unless it appears upon its face to be within a specific prohibition, such as one of those in the first ten amendments to the United States Constitution. *Stone* v. *State*, 254 Ark. 1011, 498 S.W. 2d 634; *Williams* v. *State*, 253 Ark. 973, 490 S.W. 2d 117; *Neal* v. *Still*, 248 Ark. 1132, 455 S.W. 2d 921; *Dabbs* v. *State*, 39 Ark. 353, 43 Am. Rep. 275; *San Antonio School District* v. *Rodriguez*, 411 U.S. 1, 93 S. Ct. 1278, 36 L. Ed. 2d 16 (1973), also, Stewart, J.,. concurring p. 59. See also, plurality opinion, *Lemon* v. *Kurtzman*, 411 U.S. 192, 93 S. Ct. 1463, 36 L. Ed. 2d 151 (1973), citing Stewart, J., concurring in *Rodriguez; Schlib* v. *Kuebel*, 404 U.S. 357, 92 S. Ct. 479, 30 L. Ed. 2d 502 (1971); *McDonald* v. *Board of Election Com.*, 394 U.S. 802, 89 S. Ct. 1404, 22 L. Ed. 2d 739 (1969); *McGowan* v. *Maryland*, 366 U.S. 420, 81 S. Ct. 1101, 6 L. Ed. 2d 393 (1961); *United States* v. *Carolene Products Co.*, 304 U.S. 144, 58 S. Ct. 778, 82 L. Ed. 1234 (1938); *Fleming* v. *Nestor*, 363 U.S. 603, 80 S. Ct. 1367, 4 L. Ed. 2d 1435 (1960); *New York* v. *O'Neill*, 359 U.S. 1, 79 S. Ct. 564, 3 L. Ed. 2d 585 (1959); *Alaska Packers Association* v. *Industrial Accident Com.*, 294 U.S. 532, 55 S. Ct. 518, 79 L. Ed. 1044 (1935); *Borden's Farm Products Co.* v. *Baldwin*, 293 U.S. 194, 55 S. Ct. 187, 79 L. Ed. 281 (1933).

We need not spend a great deal of time on such features of the Arkansas statute as the definition of the crime for which the death penalty may be imposed and the bifurcated trial. Since the crime in this case was murder, we view the statute only as it pertains to homicides. It is crystal clear that insofar as homicide is concerned there are under this statute several degrees all included (or potentially so) in capital felony.[2] They are:

Capital felony murder.
Life felony murder.
Felony murder in the first degree. See, Ark. Stat. Ann. §§ 41-2201, 2205 (Repl. 1964).
Felony murder in the second degree. See, Ark. Stat. Ann. §§ 41-2201, 2206 (Repl. 1964).
Voluntary manslaughter. See Ark. Stat. Ann. §§ 41-2207, 2208 (Repl. 1964).
Involuntary manslaughter. See Ark. Stat. Ann. §§ 41-2207, 2209 (Repl. 1964).
Negligent homicide. See Ark. Stat. Ann. § 75-1101 (Repl. 1957).

The definition of capital felony murder strictly limits the homicidal offenses for which the death penalty may be imposed. Ark. Stat. Ann. §§ 41-4701, 4702 (Supp. 1973). This limitation seems constitutionally adequate. *Jurek* v. *Texas,* supra. The imposition of the death sentence is not mandatory in any case, for the jury may find mitigating circumstances which outweigh any aggravating circumstances it finds to exist. Ark. Stat. Ann. §§ 41-4703, 4710, 4712 (Supp. 1973). The statute provides adequate guidelines, so limiting and directing the exercise of the jury's discretion that an arbitrary, capricious, wanton or freakish exercise of that discretion is improbable. *Gregg* v. *Georgia,* supra; *Proffitt* v. *Florida,* supra; *Jurek* v. *Texas,* supra; *Collins* v. *State,* supra. See also, *Neal* v. *State,* 259 Ark. 27, 531 S.W. 2d 17. Cf. *Woodson* v. *North Carolina,* supra; *Roberts* v. *Louisiana,* supra. The Arkansas statutes applicable here require that the sentencing authority focus on the particularized nature of the crime, just as the law

[2]For the purposes of this opinion, it is unnecessary to consider other homicides characterized as murder. See, e.g., §§ 41-2211, 2213, 2214, 2215, 2216, 2217, 2218, 2219, 2220, 2221, 2222, 2223, 2224, 2225, 2226 (Repl. 1964).

did in Georgia, Florida and Texas. Ark. Stat. Ann. §§ 41-4702, 41-4712 (Supp. 1973). The bifurcated trial mandated by our statutes in effect at the time of appellant's trial [Ark. Stat. Ann. §§ 41-4710 — 41-4713 (Supp. 1973)] seems to have been approved, although not required. The aggravating and mitigating circumstances that may be considered under our statute seem to meet constitutional muster. Ark. Stat. Ann. § 41-4711, 4712 (Supp. 1973). See *Gregg* v. *Georgia,* supra; *Proffit* v. *Florida,* supra.

It is urged, however, that our system does not meet *Gregg-Proffit-Jurek* standards necessary to avoid Eighth and Fourteenth Amendment prohibitions for lack of a mandatory appeal of a judgment imposing the death penalty and of appellate review which compares cases in which the death penalty has been imposed.

We find nothing in any opinion, and certainly no majority, which supports a holding that there *must* be either a mandatory or automatic appeal of a judgment imposing the death penalty or that there *must* be appellate review which compares cases in which the death penalty.has been imposed. We again point out that the Supreme Court of the United States did nothing more than consider the statutes of each of five states to determine whether there were sufficient safeguards against the capricious and freakish imposition of the death penalty. It is true that the Stewart plurality found that, in addition to bifurcated trial with sentencing dependent upon a jury's or trial judge's findings as to aggravating or mitigating circumstances, appellate review is an important safeguard, when that review is for error and appropriateness of the sentence, and to determine whether: the sentence was imposed under the influence of passion and prejudice or any arbitrary factor; the evidence supports the jury's or judge's finding of statutory aggravating circumstances; the sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. *Gregg* v. *Georgia,* supra.

The North Carolina death penalty statute seems to have fallen because there was no way for the state judiciary, through appellate review, to check the arbitrary and

capricious exercise of the power of the jury to determine who shall live or die. *Woodson* v. *North Carolina,* supra. See also, *Roberts* v. *Louisiana,* supra. It seems to us that the only actual requirement, even of the Stewart plurality, is that a *meaningful* appellate review is available to insure that death penalties are not arbitrarily, capriciously or freakishly imposed. The important question is whether the system creates a substantial risk of arbitrariness or caprice.

It is significant that in *Jurek,* some of the federal constitutional requirements were found to have been met by a state supreme court interpretation of the Texas capital sentencing act which would permit evidence of mitigating circumstances and appellate review of the sufficiency of the evidence to support the jury's answers to questions relating to statutory questions required in the sentencing phase of a bifurcated trial. True enough, the opinion states that Texas law provides for an expedited appeal.[3] Nothing whatever is said about comparison of sentences.

The idea that in *Gregg, Proffit,* and *Jurek,* the United States Supreme Court has held that there must be a mandatory or automatic appeal from the imposition of the death penalty by a state trial court seems to have crumbled with the recent actions of the court in *Gilmore* v. *State of Utah,* 429 U.S. 1012, 97 S. Ct. 436, 50 L. Ed. 2d 632 (1976), in which, on December 13, 1976, that court found that Gary Mark Gilmore, who had been sentenced to death, made a knowing and intelligent waiver of any and all federal rights he might have had. In a concurring opinion by the Chief Justice and Mr. Justice Powell, it is clearly pointed out that Gilmore had waived his right of appeal under state law, and the history of that waiver is recited. True enough, the order of the United States Supreme Court (White, Brennan, Marshall and Blackmun dissenting) does not specifically refer to this waiver. It does, however, state:

> \*\*\* that the State's determinations of his competence knowingly and intelligently to waive any and all such rights were firmly grounded.

---

[3]The Texas Court had pointed out that the Texas statute provided for automatic, swift and mandatory appellate review. *Jurek* v. *State,* Tex. Cr. App., 522 S.W. 2d 934 (1975).

If the Constitution of the United States requires that a state provide a mandatory appeal in such cases, we do not see how there can be a knowing and intelligent waiver of "any and all federal rights" when there has been no appeal from the state trial court's judgment imposing the death sentence. In any event, the Stewart plurality has said that it had no intention to suggest that the procedures approved in *Gregg* would be the only ones permissible under *Furman* or that a system constructed on these general lines would inevitably satisfy *Furman;* but that each system must be examined on an individual basis. *Gregg* v. *Georgia,* supra.

Most of the major concerns of the United States Supreme Court can be met by a statute that insures that the sentencing authority is given adequate information relevant to imposition of sentence and provided with standards to guide its use of that information. Our statutes clearly insure the meeting of these requirements at the jury trial. But another concern of the Stewart plurality is the existence of an adequate power in the judiciary to check the arbitrary and capricious exercise of the power of the jury to impose the death penalty. Our system supplies considerable protection against the arbitrary, capricious or freakish imposition of the death sentence.[4] It does not suffer from the deficiencies found in *Furman.* The Arkansas judiciary is vested with broad powers to check the arbitrary, capricious, wanton or freakish imposition of the death sentence by a jury. Those powers exist at both trial and appellate levels.

The trial judge is not required to impose the death penalty in every case in which the jury verdict prescribes it. Upon return of a verdict of guilty in any felony case, the entry of judgment may be postponed by the trial court for not more than 30 days. During this time probation reports may be submitted, and matters of mitigation, or any other matter the court or the defendant may deem appropriate to consider before the pronouncement of sentence and the entry of formal judgment may be presented. Ark. Stat. Ann. § 43-2301 (Supp. 1973, Supp. 1975). We have said that the trial judge

---

[4]A statement by the Nebraska Supreme Court might well be applied here. "No longer will one man die and another live on the basis of race, or a woman live and a man die on the basis of sex." *State* v. *Stewart,* 197 Neb. 497, 250 N.W. 2d 849 (1977).

in imposing sentence should have the benefit of all available information about the defendant, both favorable and adverse. *Meyers* v. *State*, 252 Ark. 367, 479 S.W. 2d 238. See also, *Hudspeth* v. *State*, 188 Ark. 323, 67 S.W. 2d 191. When the defendant appears for sentencing, he must be asked if he has any legal cause why sentence should not be pronounced against him. Ark. Stat. Ann. § 43-2302 (Repl. 1964). He may show for cause against the judgment any sufficient ground for new trial or for arrest of judgment. Ark. Stat. Ann. § 43-2304 (Repl. 1964). Denial of the right of allocution is error. *Tate* v. *State*, 258 Ark. 135, 524 S.W. 2d 624, 726 (opinion on rehearing). The trial court has power to modify any unexecuted sentence and its own judgment at any time during the term of court in which it was rendered. *Charles* v. *State*, 256 Ark. 690, 510 S.W. 2d 68; *Emerson* v. *Boyles*, 170 Ark. 621, 280 S.W. 1005.

The trial court has the power, in its discretion, to reduce a death sentence to life imprisonment, or to grant a new trial. *Black* v. *State*, 215 Ark. 618, 222 S.W. 2d 816, cert. den. 338 U.S. 956, 70 S. Ct. 490, 94 L. Ed. 590. See also, Ark. Stat. Ann. § 43-2310 (Repl. 1964). Ark. Stat. Ann. § 43-2203 (Repl. 1964) is pertinent to the right of allocution, because it sets out permissible grounds for new trial where rights of a defendant have been prejudiced. Among them are cases where the verdict is against law and evidence and where from the misconduct of the jury or any other cause, the court is of the opinion that the defendant has not received a fair and impartial trial.[5]

In considering grounds for a new trial, powers of the trial judge are great and the latitude of his discretion broad, and have always been, in this state. In *Oliver* v. *State*, 34 Ark. 632, where a verdict of manslaughter had been returned, this court spoke of the powers and duties of circuit judges in this regard:

[5]A motion for new trial is not a requisite for appellate review, but it is still permitted at any time prior to the time fixed for filing notice of appeal and has the effect of extending the time allowed for filing notice of appeal. Ark. Stat. Ann. §§ 43-2703, 43-2704 (Supp. 1973, Supp. 1975). We have also held that a motion for new trial may be heard and granted by a trial court after notice of appeal has been given and before the record has been filed in this court. *State* v. *Adkisson*, 251 Ark. 119, 471 S.W. 2d 332.

\*\*\* They preside in the courts and take personal cognizance of all that occurrs in the progress of causes. It is their duty to see that juries do not transcend the proper limits of their authority, and that all trials are fair and in accordance with law. The circuit judge has the discretion to grant new trials in all cases where he is satisfied that the ends of justice will be best subserved thereby, and should not hesitate to exercise it where he is dissatisfied with a verdict, as having reason to believe it the result of excitement, passion, prejudice, or any other influence save a calm consideration of the facts in evidence.

The presiding circuit judge must necessarily have a wide discretion to set aside a verdict where, in his judgment, it was tainted by passion, sympathy, prejudice, corruption, or any other sinister influence, and therefore was not responsive to the law and the evidence; and his exercise of that discretion will not be interfered with on appeal unless there has been an abuse of discretion. *Freels* v. *State*, 130 Ark. 189, 196 S.W. 913.

Although the right to fix punishment is primarily a duty enjoined upon juries, we have recognized, in a case where the death penalty was imposed and sustained, that in cases where the evidence does not sustain the degree of crime expressed in the jury verdict, but does support a lower degree, a plea for partial relief by reducing the sentence to life imprisonment can be granted. *Hildreth* v. *State*, 215 Ark. 808, 223 S.W. 2d 757. Even though we spoke in that case primarily to the power of this court, what we said applies equally to the power of the trial judge to reduce a penalty of death to one of life imprisonment without parole where the evidence does not support the jury verdict on the sentencing phase of the trial. There can be no doubt about the trial court's power in this respect. Ark. Stat. Ann. § 43-2310 (Repl. 1964) provides:

Reduction of verdict. — The court shall have power, in all cases of conviction, to reduce the extent or duration of the punishment assessed by a jury, if, in the opinion of the court, the conviction is proper, and the punishment assessed is greater than under the circumstances of the case, ought to be inflicted, so that the punishment be

not, in any case, reduced below the limit prescribed by law in such cases.

See also, *Tabor* v. *State*, 246 Ark. 983, 440 S.W. 2d 536.

In practice we have regarded this statute as giving the trial judge an opportunity to review the sentence, from his superior ability to evaluate facts, afforded by seeing and hearing the parties and witnesses and knowing the trial atmosphere, as he would weigh the evidence in considering a motion for new trial. The Missouri Supreme Court has given similar treatment to a virtually identical statute in that state. *State* v. *Rizor*, 353 Mo. 368, 182 S.W. 2d 525 (1944). Like that court, we have often treated the extent and duration of the punishment as a cognizable question on appeal where there was evidence of passion and prejudice.

If the evidence proves insufficient to support a jury's verdict of a higher offense, the trial court may sentence the defendant for a lesser included offense where the evidence clearly shows the commission of the latter (and this court, in its discretion, may reduce the sentence to that prescribed for the lesser offense). *Caton* v. *State*, 252 Ark. 420, 479 S.W. 2d 537. This rule applies in murder cases as well as for other felonies. *Simpson* v. *State*, 56 Ark. 8, 19 S.W. 99. Even when there was no distinction in different types of murder for which the death penalty, or at the discretion of the jury, life imprisonment, could be imposed, the death penalty was treated by this court as if it were a higher degree of murder in the first degree than murder in the first degree when the death penalty was not imposed. *Sneed* v. *State*, 159 Ark. 65, 255 S.W. 895. The rationale for doing so is even greater under the statutes in effect at the time appellant was sentenced. Previously, the death sentence was mandatory, unless the jury, at its discretion, decided to impose life imprisonment instead. Ark. Stat. Ann. §§ 41-2227, 43-2611, 43-2153 (Repl. 1964). Under the statute in effect when Collins was tried, there is a clear delineation of separate degrees of crime, i.e., capital felony, life felony without parole, life felony and felony. Ark. Stat. Ann. § 41-4701 (Supp. 1973). Capital felonies are clearly defined and limited. Ark. Stat. Ann. § 41-

4702 (Supp. 1973). The next lesser included offense is life felony without parole, which differs from capital felony only in that there are mitigating circumstances, which are expressly stated.[6] Ark. Stat. Ann. §§41-4703, 4712 (Supp. 1973). The next lesser degree is life felony, which includes all crimes for which life imprisonment or the death penalty had been formerly prescribed. Ark. Stat. Ann. § 41-4704 (Supp. 1973). All other crimes were felonies. Ark. Stat. Ann. § 41-4705 (Supp. 1973).

Thus, it is quite clear that the trial judge has the power and the duty to reduce the punishment from that for capital felony to that for life felony or any of the other degrees of homicide, if he finds the evidence insufficient to support the higher degree of homicide and sufficient only to support the lesser degree. Thus, if he found there was no sufficient evidence to support the jury's finding on any aggravating circumstance enumerated in §41-4711, and that there was not sufficient evidence to support its finding that sufficient aggravating circumstances existed or that there were not sufficient mitigating circumstances to outweigh the aggravating circumstances, but there was sufficient evidence to support the finding of guilt, he should impose a sentence of life imprisonment without parole as punishment for the lesser degree of homicide, life felony without parole. Ark. Stat. Ann. § 41-4710 (Supp. 1973).

The power of the trial court may be exercised at an even later stage in the criminal justice process. Post-conviction relief may be granted, under appropriate circumstances, by the trial court under Rule 37 of the Arkansas Rules of Criminal Procedure, which would apply today, but which existed at the time of the trial and judgment in this case in substantially identical form as Criminal Procedure Rule 1 [Vol. 3A, Ark. Stat. Ann. (Supp. 1973, Supp. 1975)]. The arbitrary, capricious, wanton or freakish imposition of the death penalty would seem to be a ground for modification of a sentence to death on the ground that it was imposed in violation of the Constitution and laws of the United States or of this state or that it was in excess of the maximum authorized by law or that it was otherwise subject to collateral attack.

[6]Perhaps the mitigating circumstances were not limited to those stated. Cf. Ark. Stat. Ann. §§ 41-4712 and 41-4711 (Supp. 1973).

Concededly, there is no mandatory appellate review in Arkansas. The likelihood that a death penalty would be executed without such an appeal, in the absence of a knowing and intelligent waiver, is highly improbable. At the time the sentence is announced and judgment is entered thereon, the trial judge *must* advise the defendant of his right to appeal. Ark. Stat. Ann. § 43-2301 (Supp. 1973, Supp. 1975). Defense counsel also has the responsibility for explaining to the defendant the meaning and consequences of the judgment and advising him of his right to appeal. American Bar Association Standards for Criminal Justice, The Prosecution and Defense Function, Part VIII, § 8.2. See also, American Bar Association Standards, Post Conviction Remedies, § 4.4 (b) (Approved Draft, 1968). Under present rules, defense counsel may not withdraw from the case after notice of appeal is given without permission of this court. Rule 36.26 Rules of Criminal Procedure; Rule 9, Rules of Circuit and Chancery Courts. Any person convicted of a felony in a circuit court of this state has the right of appeal to this court. Ark. Stat. Ann. § 43-2701 (Supp. 1973, Supp. 1975). Notice of appeal must be filed with the trial court within 30 days from the date of sentencing and entry of judgment, unless a motion for new trial is earlier filed in which case, the time for filing notice of appeal does not expire until 30 days after the motion has been disposed of. Ark. Stat. Ann. §§ 43-2703, 2704 (Supp. 1973, Supp. 1975). Of course, this appellant did appeal, so the question of waiver, or right to waive appeal, is significant only to the extent that it has a bearing on the question of whether an appellate review is mandated by Eighth and Fourteenth Amendment requirements.

Appeals in criminal cases take precedence over all other cases on our docket. Ark. Stat. Ann. § 43-2701 (Repl. 1964). On appellate review, this court has the power to reduce the punishment, from that imposed by a circuit court for a higher degree of an offense than the evidence will support, to the punishment for that degree which the evidence will support. *Caton* v. *State,* 252 Ark. 420, 479 S.W. 2d 537. We have held that Ark. Stat. Ann. § 27-2144 (Repl. 1962) empowering this court to modify the judgment or order appealed from and enter such judgment as this court may, in its discretion deem just, is applicable to criminal cases. *Blake* v. *State,* 186 Ark. 77,

52 S.W. 2d 644; *Webb v. State,* 154 Ark. 67, 242 S.W. 380; *Smith v. State,* 205 Ark. 1075, 172 S.W. 2d 248. We have exercised this power in homicide cases, (see, e.g., *Blake v. State,* supra; *Webb v. State,* supra; *Brown v. State,* 34 Ark. 232) and in some instances in cases where the death penalty had been imposed. See, e.g., *Blake v. State,* supra; *Webb v. State,* supra. In *Blake,* we had this to say about our practice in the exercise of this power:

> This power has frequently been exercised by this court in subsequent cases, and while the practice usually followed is to reverse the judgment on account of the excessive punishment, unless the Attorney General will consent that the trial court impose a lower sentence, that practice has not always been followed. The court, when it is thought proper to do so, has itself fixed the reduced punishment.

See also, *Smith v. State,* supra. We have also recently said that we might reduce the penalty unless the Attorney General elects to take a new trial. *Gaskin v. State,* 244 Ark. 541, 426 S.W. 2d 407. In *Hadley v. State,* 196 Ark. 307, 117 S.W. 2d 352, this court observed that there were numerous instances in which it had reduced the punishment of an appellant from death or life imprisonment. We lately recognized that we had the power to fix a reduced punishment where the death penalty had been imposed in *Bagley v. State,* 247 Ark. 113, 444 S.W. 2d 567.

The power of this court to reduce a sentence if it is deemed excessive was recognized in Ark. Stat. Ann. § 43-2725.2 (Supp. 1973, Supp. 1975). We have construed that act to preserve the distinction between executive clemency and appropriate judicial review of a sentence where there is error pertaining to the sentence. In *Abbott v. State,* 256 Ark. 558, 508 S.W. 2d 733, we said:

> *** Although we have previously found it unnecessary to pass directly on the constitutionality of this provision insofar as it might be construed to empower this court to reduce a sentence otherwise proper and within statutory limits in cases arising after passage of the act, it should be clear that legislative action cannot override constitutional provisions. We strongly intimated that this

act was ineffective to overrule the holding in *Osborne* v. *State*, supra, in *Hurst* v. *State*, supra, and cited the case of *People* v. *Odle*, 37 Cal. 2d 52, 230 P. 2d 345 (1951). In that case a similar statute was construed by the California court to do no more than authorize it to reduce the punishment in lieu of granting a new trial, when the only error found on appellate review related to the punishment imposed and was prejudicial. It specifically held that the statute granted no power to modify a sentence where there was no error in the proceeding. To construe the statute otherwise, said the court, speaking through Justice Traynor, would give the reviewing court clemency powers similar to those vested in the Governor by the California Constitution. That court clearly recognized that any construction of the statute extending the power of the appellate court any further would raise serious constitutional questions relating to the separation of powers. We think the construction given to the California statute by that state's Supreme Court was correct and that the same construction should be given our statute. When given that construction, it is clearly constitutional. If construed to give this court the power to reduce a sentence in the absence of error pertaining to the sentence, the statute would be unconstitutional for violation of Art. 6, Sec. 18 and Art. 4, Sec. 2 of the Arkansas Constitution, and upon the authority of *Osborne* v. *State*, supra.

Such cases as *Osborne* v. *State*, 237 Ark. 5, 371 S.W. 2d 518; *Atwell* v. *State*, 244 Ark. 739, 427 S.W. 2d 1; and *Hooper* v. *State*, 257 Ark. 103, 514 S.W. 2d 394 do not limit our review in death penalty cases. There is a vast difference in reviewing a sentence for error (including error resulting from insufficient evidentiary support) in the sentencing procedure and reviewing a sentence resulting from a proper and legal sentencing procedure where sufficiency of evidence is not a basis for review. There is also a great difference in reducing a sentence when there is error in fixing the degree of the crime and reducing a sentence when there is not. The former has nothing to do with clemency. There is also a difference where nature of the punishment rather than the duration is at issue. See *Sneed* v. *State*, 159 Ark. 65, 255 S.W. 895. We long ago

recognized that the constitutional ban of cruel and unusual punishment is directed against the character of the punishment and not its duration. *Williams* v. *State*, 125 Ark. 287, 188 S.W. 826.

We have clearly made the distinction between those cases where reduction of the sentence is clemency and when it is a matter of proper judicial review. In *Rorie* v. *State*, 215 Ark. 282, 220 S.W. 2d 421, we said:

> *** When this Court finds that the evidence is insufficient to support the punishment assessed, then we have the power to modify the punishment. Our cases clearly reflect, however, that this modification is done, not on a basis of judicial clemency, but only in a case in which the evidence would not sustain the higher punishment assessed. ***

In *Smith* v. *State*, 194 Ark. 1041, 110 S.W. 2d 24, we said:

> *** It may be of a character so aggravated in its nature as to call for the severest possible penalty. If the jury thought so, then the trial court, wherein all the evidence was heard, must have determined that the verdict, severe as it was, was justified. We cannot presume otherwise. Besides, this court possesses no power inherent in the office of the chief executive, permitting us to pardon or remit penalties, although we may reduce extreme penalties when not supported by the evidence. ***

*Allison* v. *State*, 204 Ark. 609, 164 S.W. 2d 442, may be an aberration. It was decided when the death penalty was to be imposed for rape unless the jury, at its discretion, fixed the punishment at life imprisonment. We cannot now tell whether the court was saying, in *Allison*, that it had no power to reduce the sentence or that it declined to do so on the basis of the facts. If we were saying the former, the decision is not consistent with cases decided earlier. In any event, different degrees of the offense were not involved, as is the case here. *Allison* was cited in *Nail* v. *State*, 231 Ark. 70, 328 S.W. 2d 836, where this court had reviewed the evidence and found it sufficient to support the verdict of guilt of first degree murder.

But in *Nail,* we said that this court has no power to change the punishment fixed by the jury *unless the proof fails to sustain the charge for which the defendant is convicted.* This distinction is important when life felony murder is a lesser included offense on a charge of capital felony murder. It should also be noted that in *Nail, Rorie* is cited as authority. It is also worthy of note that *McCall* v. *State,* 230 Ark. 425, 323 S.W. 2d 421, is also cited as authority in *Nail.* In *McCall,* it was recognized that this court could reduce the punishment for the purpose of eliminating some error committed by the trial court. Somewhat later than *Allison,* we considered the matter in *Clark* v. *State,* 246 Ark. 876, 440 S.W. 2d 205, saying:

> Thus the trial court's error had no bearing upon the jury's determination of guilt or innocence. It affected only the extent of the punishment to be imposed. In that situation we have a choice among several corrective measures. We may, depending upon the facts, reduce the punishment to the maximum for the lesser offense, reduce it to the minimum for the lesser offense, fix it ourselves at some intermediate point, remand the case to the trial court for the assessment of the penalty, or grant a new trial either absolutely or conditionally. Several of the cases were discussed in *Bailey* v. *State,* 206 Ark. 121, 173 S.W. 2d 1010 (1943).

Thus, neither *Allison* nor *Nail* would limit the power of this court to review a sentence of death imposed under the statutes governing the trial of Collins. We have in cases decided subsequently to *Allison* considered the circumstances revealed by the evidence to determine whether the death penalty was greater punishment than should have been imposed. See *Davis* v. *State,* 246 Ark. 838, 440 S.W. 2d 244, cert. den. 403 U.S. 954, 91 S. Ct. 2273, 29 L. Ed. 2d 865 [where we recognized the discretion of the trial court to reduce the punishment under Ark. Stat. Ann. § 43-2310 (Repl. 1964)]; *Young* v. *State,* 230 Ark. 737, 324 S.W. 2d 524. See also, *Walton* v. *State,* 232 Ark. 86, 334 S.W. 2d 657; *Hall* v. *State,* 209 Ark. 180, 189 S.W. 2d 917.

In capital offenses, for many years all errors of the lower court prejudicial to the rights of appellant have been required

to be heard and considered by this court and, if we found any prejudicial error by the trial court, this court was required to reverse and remand the cause for a new trial, or, in the discretion of this court, modify the judgment. Ark. Stat. Ann. § 43-2723 (Repl. 1964). In 1971, this particular statute was repealed but the scope of appellate review was not materially changed, except to extend this type of review to sentences for life imprisonment as well as death sentences. See Ark. Stat. Ann. § 43-2725 (Supp. 1973, Supp. 1975). The earlier statute was construed to mean that this mandated review required an examination of the trial record, even though the objectionable action which might be reversible error was not argued on appeal in any way. *Rorie v. State,* 215 Ark. 282, 220 S.W. 2d 421; *Hays v. State,* 230 Ark. 731, 324 S.W. 2d 520; *Young v. State,* 230 Ark. 737, 324 S.W. 2d 524. We have made the same application of the later one, citing *Rorie. Robertson v. State,* 256 Ark. 366, 507 S.W. 2d 513. We applied this type of review on the first appeal in this case.

Appellate review of cases in which the death penalty has been imposed has always been more comprehensive than in other cases. For, e.g., error in failure to properly instruct the jury with reference to punishments that it might impose has been held to be reversible, even though defendant did not request such an instruction. *Webb v. State,* 154 Ark. 67, 242 S.W. 380, 383 (opinion on rehearing); *Alford v. State,* 223 Ark. 330, 266 S.W. 2d 804.

We have recognized the power of this court under Ark. Stat. Ann. § 27-2144 (Repl. 1962) to reduce the punishment to that appropriate for the crime in cases in which we found error only in the sentencing *procedure. Wilburn v. State,* 253 Ark. 608, 487 S.W. 2d 600; *Walker v. State,* 91 Ark. 497, 121 S.W. 925; *Williams v. State,* 66 Ark. 264, 50 S.W. 517. We have exercised this power in capital cases, by reducing the punishment to life imprisonment, when error by the trial court could have affected the sentence only, holding that a new trial would not be required in such cases. *Crowe v. State,* 178 Ark. 1121, 13 S.W. 2d 606. In some of these cases we have reduced the penalty to life imprisonment subject to the election of the Attorney General to request a new trial. See *Williams v. State,* 183 Ark. 870, 39 S.W. 2d 295. We have recognized the existence of this power as recently as *Bagley v.*

*State,* 247 Ark. 113, 444 S.W. 2d 567.

Unquestionably this court has the right, power and duty to reduce the punishment in any case where there is any indication that it resulted from passion and prejudice. *Hadley* v. *State,* 196 Ark. 307, 117 S.W. 2d 352; *Wilkerson* v. *State,* 209 Ark. 138, 189 S.W. 2d 800. We have done so by reducing a sentence of death on a rape charge to life imprisonment. *Hogan* v. *State,* 191 Ark. 437, 86 S.W. 2d 931. We have also carefully reviewed evidence to determine whether there was an abuse of discretion by the trial court or jury in fixing a punishment within statutory limits. *Wilkerson* v. *State,* supra; *Rutledge* v. *State,* 222 Ark. 504, 262 S.W. 2d 650.

The powers of this court to order a new trial are somewhat limited, but in cases such as the one before us, the court is not impotent. In *Oliver* v. *State,* 34 Ark. 632, where the charge was murder and the verdict manslaughter, this court ordered a new trial. The scope of review in such cases was thoroughly analyzed and articulately stated in the opinion by Justice Eakin, viz:

> There is another class of cases, in which there has been evidence of some facts, from which the jury has inferred other facts necessary to sustain the verdict, in which this court has granted a new trial on the grounds that the facts shown did not warrant the inference, and that therefore the evidence was insufficient. *** These are not cases of *conflict,* but want of evidence. *** Of course, no positive rules can be announced of strict and unvarying application, but the general policy of the court may be fairly understood from what has been said.

> It will be seen, and in view of a very common misapprehension it is worth noting, that this court has never adopted the rule of refusing a new trial in all or any cases, where there has been *any evidence whatever,* however weak, to support the verdict — what is called a *scintilla* of evidence. The following more rational rules seem to result from all the decisions:

> 1. Where there has been a *conflict* of evidence a new trial will not be granted here, merely because the

preponderance of evidence, in the mind of the court, may seem to be against the verdict. That deference will be accorded to the jury whose peculiar province it is to compare, sift, and weigh the evidence; and to the circuit judge, whose duty it is to supervise the trial, and grant a new one, if, in his opinion, the verdict has resulted from improper influence, misconduct of jurors, excitement, prejudice, hasty judgment, misapprehension of the law, or any other of the recognized causes for a new trial.

2. But in all cases, even those of conflict, this court will direct a new trial, when, upon inspection of the evidence, the verdict is so clearly and palpably against the weight of it as to shock a sense of justice. The line lies between a mere preponderance within the bounds of a fair difference of opinion, and that gross preponderance which indicates an unreasoning passion or prejudice on the part of the jury, or misapprehension of the law, or disregard of the legitimate sphere of their action.

3. A new trial will be granted when there is no evidence at all to support the verdict, or where it fails in some material link. The jury will not be allowed to supply the missing link by inferences and presumptions from other facts unless they be legitimate and fair presumptions, such as naturally follow.

We come now to the delicate and responsible duty of applying these rules to the case before us. There is little conflict of evidence concerning the occurrences at the time of the killing, and nothing to affect materially the credit of any witness. Indeed they agree in an exceptional manner.

\*\*\*

\*\*\*Considering the character and motives of Yerby, it is so plain to us that the Olivers were in danger, and so probable that death would have resulted to one of them had Yerby not been killed, that it shocks our sense of

justice, under the evidence presented, to deny him the benefit of self-defense. We think the verdict plainly and palpably contrary to the weight of evidence, and that this case falls legitimately within the exception to the rule against disturbing verdicts.

In addition, if the Attorney General feels that the evidence is insufficient to support a verdict, and this court has doubts about it, a new trial will be granted in the interest of justice. *Thomas* v. *State,* 72 Ark. 582, 82 S.W. 202; *Blaylock* v. *State,* 187 Ark. 606, 61 S.W. 2d 72. We have also reduced the punishment, even when the evidence was sufficient to support the verdict of guilt of the proper crime or degree of crime but the jury obviously failed to consider mitigating circumstances. See *Traylor* v. *State,* 80 Ark. 617, 96 S.W. 505; *Petty* v. *State,* 76 Ark. 515, 89 S.W. 465, even where the appellant had been sentenced to death. *Davis* v. *State,* 155 Ark. 245, 244 S.W. 750. We recognize that punishment is cruel and unusual when it is so wholly disproportionate to the nature of the offense as to shock the moral sense of the community. *Carter* v. *State,* 255 Ark. 225, 500 S.W. 2d 368; *Geurin* v. *City of Little Rock,* 203 Ark. 103, 155 S.W. 2d 719.

We find that the Arkansas system of prosecuting and sentencing those found guilty of a charge of capital felony murder provides adequate safeguards against arbitrary, capricious or freakish imposition of the death penalty to successfully pass constitutional examination in the light of the Eighth and Fourteenth Amendment standards ascertainable from the *Woodson-Roberts-Gregg-Proffit-Jurek* quintuplet offspring of *Furman.*

The offense of capital felony murder is carefully defined and narrowly restricted, and the focus of the trial is on a particularized crime. The jury making the determination must first find unanimously that the accused is guilty of one of the narrowly defined categories of the crime beyond a reasonable doubt. If a guilty verdict is returned, the same jury, in the sentencing phase of a bifurcated trial may then hear testimony tending to show one or more specifically enumerated groups of aggravating circumstances plus evidence relevant to mitigating circumstances; but the death

penalty cannot be imposed unless the jury unanimously finds, beyond a reasonable doubt, that one or more aggravating circumstance exist (specifying in writing which of them does) and finds that aggravating circumstances outweigh any mitigating circumstances found to exist. This procedure permits the jury in either the first or second phase of the trial to consider the nature and circumstances of the crime and to give regard to the past life and habits of the particular offender. The view taken by the Arkansas lawmakers was that all serious felonies, such as murder, are not identical, either as to the gravity of the offense or the moral culpability of the offender. *Collins* v. *State*, 259 Ark. 8, 531 S.W. 2d 13. The jury will be given adequate information relevant to imposition of sentence. It is provided with standards to guide its use of that information. Thus, the possibility that the death sentence will be imposed arbitrarily or capriciously is substantially reduced.

There is ample means for the judiciary to check the wanton, arbitrary or capricious exercise of the power and discretion of the jury to determine who shall die for the crime of murder.

In the first place there is a meaningful check at the trial court level. The trial judge, before pronouncement of the death sentence and entry of judgment, may consider appropriate matters of mitigation, and any other matters appropriate, both favorable and adverse, to the defendant. The defendant must be given the opportunity to show legal cause why sentence should not be pronounced or any of the recognized grounds for a new trial, among which are: (1) the verdict is contrary to the law or the evidence; (2) misconduct of the jury; and (3) the defendant has not, in the opinion of the judge, received a fair and impartial trial. The latitude of the trial judge's discretion is broad. He may set aside a verdict when he is satisfied the ends of justice would be thereby served and should do so where he has reason to believe it is the result of passion, prejudice or any factor other than a calm consideration of the facts in evidence. This discretion is applicable when the jury verdict would result in the imposition of the death penalty, if the judge finds, for any reason, that the circumstances of the case do not warrant the imposition of the death penalty.

The discretion of the jury and that of the trial judge are sufficiently directed and limited to minimize the risk of wholly arbitrary and capricious action in imposing the death penalty. The trial judge must advise the defendant, at the time of sentencing, of his right to appeal, and defense counsel has obligations to see that the right is preserved.

There is a meaningful appellate review by this court of the appropriateness of the death penalty in a particular case, considering both the punishment and any errors on points raised in the trial court, including the sufficiency of the evidence to support any part of the jury verdict. This appellate review includes: (1) a determination whether the sentence was the result of passion, prejudice or any arbitrary factor; (2) whether the evidence supports the jury's finding of any statutory aggravating circumstances; (3) whether the evidence supports the jury's findings on the question whether mitigating circumstances outweigh aggravating ones; (4) whether the sentence is excessive. On appellate review, this court can reduce the sentence, or grant a new trial, in its discretion, if the sentence is excessive or there is error affecting the sentence only, or where there is insufficient evidentiary support for the sentence. Of course, the exercise of discretion by the trial judge is always subject to review for abuse. The "freak" or disparate death sentence would certainly warrant reversal or reduction as shocking to our sense of justice.

There is no specific requirement that this court compare sentences in other cases; however, the scope of permissible review of the sentence on appeal would necessarily require that we consult prior cases as precedent for our determining whether there was error in the sentencing procedure, whether the evidence was sufficient to support any finding made by the jury, whether any of the findings was the result of passion or prejudice or any other arbitrary factor and whether there had been an abuse of the discretion of either the jury or the trial judge in imposing the sentence. We recognized in our first consideration of this case that, since the jury's findings with respect to the various aggravating or mitigating circumstances must be in writing, the basis for its verdict will be known and can be compared with the punishment in other cases, noting that this general approach to the problem had been upheld in *State v. Dixon,* 283 S. 2d 1 (Fla., 1973); *Coley* v.

*State,* 231 Ga. 829, 204 S.E. 2d 612 (1974); *Jurek* v. *State,* supra.

These sentencing and review procedures certainly leave no substantial risk that the death sentence will be imposed randomly, arbitrarily, capriciously, wantonly or freakishly, and tend to promote evenhanded, rational and consistent imposition of the death penalty. In addition to the powers and responsibilities of the judicial system, the Arkansas system of checks and balances provides for an additional safeguard as a check against the arbitrary, capricious, freakish or wanton imposition of the death penalty in the executive branch, i.e., the power of the Governor of Arkansas to commute a sentence. Art. 6, § 18, Constitution of Arkansas. This power should not be totally ignored in reviewing a state's system to determine whether it provides adequate safeguards against the death penalty as cruel and unusual punishment prohibited by the Eighth Amendment to the United States Constitution. Recognition was given to the significance of this power in the statute under which Collins was tried. Ark. Stat. Ann. § 41-4714 (Supp. 1973).

A commutation is a modification of sentence or mitigation of the punishment to be given. *Whan* v. *State,* 485 S.W. 2d 275 (Tex. Cr. App., 1972), cert. den. 411 U.S. 934, 93 S. Ct. 1906, 36 L. Ed. 2d 394; *Ex parte Collins,* 94 Mo. 22, 6 S.W. 345 (1887); *Application of White,* 166 Misc. 481, 2 N.Y.S. 2d 582 (1938). It changes the punishment imposed to a less severe one and leaves the sentence in a modified form. *Williams* v. *Brents,* 171 Ark. 367, 284 S.W. 56; *Duehay* v. *Thompson,* 223 F. 305 (9 Cir., 1915), affd. 217 F. 484; *Ex parte Collins,* supra; *Ex parte Denton,* 69 Okla. Cr. 204, 101 P. 2d 276 (1940); *People* v. *Frost,* 133 App. Div. 179, 117 N.Y.S. 524, 23 N. Y. Cr. 544 (1909); *People* v. *Larkman,* 137 Misc. 466, 244 N.Y.S. 431 (1930). A death sentence may be modified to one of life imprisonment by commutation. *Biddle* v. *Perovich,* 274 U.S. 480, 47 S. Ct. 664, 71 L. Ed. 1161, 52 ALR 832 (1927); *Ex parte Denton,* supra; *Duehay* v. *Thompson,* supra; *People* v. *Frost,* supra. See also, *Ex parte Wells,* 59 U.S. 307, 15 L. Ed. 421 (1855); *Schick* v. *Reed,* 419 U.S. 256, 95 S. Ct. 379, 42 L. Ed. 2d 430 (1974). We take judicial notice that this power has been exercised by Arkansas governors. See, e.g., Governor's Clemency Proclamations, March 29, 1967 to _____

Nos. 2395-2409, Office of the Secretary of State. The act applicable here provided procedures which would tend to prevent the arbitrary exercise of this power. It should be presumed that in the exercise of the power, the Governor would necessarily compare a sentence with other sentences which had been commuted as well as with sentences on which commutation had not been granted. He might well make comparisons with cases where this court had either affirmed death sentences or reduced them.

Comparative review of the sentence in this case is difficult because this is the first case to reach us for review since the repeal of the statute giving juries virtually unlimited discretion in deciding which of those found guilty of murder in the first degree should live or die. The affirmance of cases when that discretion was considered to be so broad furnishes no basis for comparison. This was a vicious murder of an elderly employer for pecuniary gain, which followed a brutal assault upon the employer's elderly wife (who miraculously survived), apparently for the purpose of obtaining the weapon with which the mortal wound was inflicted. An inference that, after the vicious robbery-murder was committed, this once-convicted robber was bent upon the pursuit of other such crimes is justifiable from evidence of his theft of an automobile in Madison County and his alteration of the death weapon stolen from Welch to convert it into a sawed-off, double-barrelled shotgun, which he immediately took to the most populous area of the state. There was certainly sufficient evidence to support the jury's finding of aggravating circumstances outweighing the mitigating circumstances of appellant's youth. There was no substantial evidence which would support a finding of any other mitigating circumstance, and appellant's youth in this case deserves little weight, in the circumstances. To say the least, we are unable to find any case in which this court has reduced a death penalty where there was such a dearth of mitigating circumstance and such seriously aggravating circumstances.

We adhere to the views we expressed on the former appeal and since we find that the imposition of the death penalty was not in violation of the Eighth and Fourteenth Amendments to the United States Constitution, we reinstate

the judgment and it is accordingly

Affirmed.

GEORGE ROSE SMITH, HOLT and HICKMAN, JJ., dissent.

## APPENDIX

Ark. Stat. Ann. § 41-1501 (Criminal Code 1976) changed the felony murder rule [formerly Ark. Stat. Ann. § 41-4702 (Supp. 1973)] by eliminating mass transit piracy and treason and adding escape in the first degree to the list of felonies to which the rule is applicable; and by including provisions creating accomplice liability (and affirmative defenses for an accomplice); by extending the rule to include a killing committed in immediate flight from an included felony; and by providing that the death be caused "under circumstances manifesting extreme indifference to the value of human life."

It also changed the focus of an unlawful killing involving a public official from (E) the unlawful killing of a public official resulting from a premeditated design to kill anyone, to (d) the unlawful killing of anyone resulting from a premeditated design to kill a public official. It added murder pursuant to agreement as a capital murder.

Ark. Stat. Ann. § 41-1304 (Criminal Code 1976) is different from § 41-4712 (Supp. 1973) in that it states that mitigating circumstances are not limited to those provided in the statute and by adding as mitigation the fact that the defendant has no significant history of prior criminal activity.

Mitigating circumstances are no longer limited to those provided in the statute and now include the circumstance that the defendant has no significant history of prior criminal activity. Ark. Stat. Ann. § 41-1304 (Criminal Code, 1976) § 41-4712 (Supp. 1973).

Aggravating circumstances were changed somewhat as they relate to a person who has a prior record of commission of a felony. Ark. Stat. Ann. § 41-1303 (Criminal Code, 1976), § 41-4711 (Supp. 1973).

Substantive changes in trial procedure, § 41-1301 (Criminal Code, 1976), formerly § 41-4710 (Supp. 1973), include a provision that evidence of mitigating circumstances may be presented regardless of whether the evidence is admissible under the rules of evidence; and for waiver of the death penalty by the prosecutor, expressly or by stipulation as to the facts of mitigating and aggravating circumstances, after trial. § 41-1302 (Criminal Code, 1976) allocates the burden of proof during the sentencing phase of a capital trial.

GEORGE ROSE SMITH, Justice, dissenting. On July 2, 1976, the Supreme Court of the United States sustained newly enacted death-penalty statutes in Georgia, Florida and Texas. In all three cases Justice Stewart's opinion stressed a provision for mandatory appellate review as a safeguard against arbitrary action in the trial court. In the Georgia case, for example, he pointed out that "[i]n addition to the conventional appellate process available in all criminal cases, provision is made for special expedited direct review by the Supreme Court of Georgia of the appropriateness of imposing the sentence of death in the particular case."

In the present case the majority state: "Concededly, there is no mandatory appellate review in Arkansas." An effort is then made to show that our present laws in fact assure an appellate review in every case. As the majority observe, however, the review depends upon the trial judge and defense counsel's performance of duties imposed upon them by law or by professional obligation. In view of all the delays, oversights, and errors that can occur in any voluntary system of appellate review, I cannot agree that our procedure is fully as expeditious and effective as those which were sustained in the Georgia, Florida, and Texas cases.

As to the *Gilmore* opinions, I cannot read into them such a sweeping statement of law as the majority are able to find there. Any constitutional right can be waived. For instance, a jury trial is mandatory in criminal cases, but that right may be waived. Similarly, a person condemned to death could waive the benefit of a mandatory appellate review, but, as I

understand the Supreme Court's position in the three cases upholding the death-penalty statutes, the mandatory review ought to be provided in the first place, leaving the accused the option of affirmatively declining it if he so desired.

Of course I concede the substantial possibility that in this case the majority will prove to be right and I to be wrong. Yet the opposite possibility also exists. In the circumstances an immediate revision of our statutes, to conform to those upheld in Georgia, Florida, or Texas, might in the long run prove to have been a wise precautionary measure.

HOLT, J., joints in this dissent.

DARRELL HICKMAN, Justice, dissenting. A majority of the justices of the United States Supreme Court, while disagreeing on the legal and moral questions of the death penalty, have agreed it is the arbitrary or freakish use of the penalty rather than the punishment itself which violates the United States Constitution. See *Furman* v. *Georgia,* 408 U.S. 238 (1972). In this context the Supreme Court finally approved the law and procedure in Georgia. *Gregg v. Georgia,* 428 U.S. 153, 96 S. Ct. 2909 (1976). The two opinions approving the Georgia law and procedure commented especially on two areas of responsibility — sentencing at the trial level and review of the sentence by the state appellate court. In Georgia, the trial judge must review the sentence and file a special written report justifying the death penalty. Appeal to the Georgia Supreme Court is prompt and automatic. The Georgia court determines if the death sentence was imposed under the influence of passion, prejudice or any other arbitrary factor. A special assistant to the court accumulates records of all capital cases for use in comparison. The sentence is then compared with sentences in similar cases to determine if it is excessive or disproportionate. The Georgia court has found that the law imposes on it a duty to set aside a death sentence that is out-of-line with the penalty in similar cases.

In the two opinions approving the Georgia law, special comment was made regarding the Georgia appellate review as a check against the random or arbitrary use of the death

penalty. In the opinion written by Justice Stewart, the court said:

> It is apparent that the Supreme Court of Georgia has taken its review responsibilitites seriously. *Gregg*, 428 U.S. 153, 96 S. Ct. 2909, 2940 (1976).

The opinion written by Justice White, after commenting on prompt and automatic review, report of the trial judge, comparison of similar cases and a history of setting aside excessive penalties, stated:

> Indeed, if the Georgia Supreme Court properly performs the task assigned to it under the Georgia statutes, death sentences imposed for discriminatory reasons or wantonly or freakishly for any given category of crime will be set aside. *Gregg*, 428 U.S. 153, 96 S. Ct. 2909, 2949 (1976).

In comparison, Arkansas has no provision for a special report by the trial judge; there is no mandatory appeal law; there is no special assistant collecting records of capital cases; there is no provision for comparing sentences; there is no recent history of reducing cases simply because they are excessive. To the contrary, this court reversed itself and found there was no legal authority to reduce a sentence simply because it was excessive. *Osborne* v. *State,* 237 Ark. 5, 371 S.W. 518 (1963). The Arkansas Legislature, after the *Osborne* case, gave this court the express authority to reduce sentences simply because they were excessive. Ark. State. Ann. § 43-2725.2 (Supp. 1975). This court even rejected that law, stating that such a power was unconstitutional because it amounted to the use of clemency power. *Hooper* v. *State,* 257 Ark. 103, 514 S.W. 2d 394 (1974).

The majority opinion quotes some cases in the early history of this court as evidence that this court has reduced sentences as excessive. See *Hadley* v. *State,* 196 Ark. 307, 117 S.W. 2d 352 (1938). However the *Hadley* case and other similar cases were specifically overruled by the *Osborne* case. The language of the *Osborne* case could not be more specific, and I quote it for emphasis.

Counsel vigorously maintains that the punishment is so severe that it should be reduced by this court. It is true that in a number of the older cases, including one as recent as *Carson* v. *State*, 206 Ark. 80, 173 S.W. 2d 122, we have assumed the power to mitigate the punishment imposed by the trial courts. The right to exercise clemency is, however, vested not in the courts but in the chief executive. Ark. Const., Art. 6, § 18. Our latest cases have uniformly followed the rule, which we think to be sound, that the sentence is to be fixed by the jury rather than by this court. If the testimony supports the conviction for the offense in question and if the sentence is within the limits set by the legislature, we are not at liberty to reduce it even though we may think it to be unduly harsh.

If this language were not enough, it was made perfectly clear in the *Hooper* case that this court would not reduce a sentence because it was excessive, or was based on passion and prejudice. For emphasis, I will quote the language from the *Hooper* case.

Finally, it is asserted that the verdict of the Jury is excessive and indicates passion and prejudice on the part of the jury. We have held that we have no authority to reduce a sentence that is not in excess of statutory limits, and we have consistently, in recent years, followed that rule.

The majority opinion, although implying otherwise, makes it clear the *Osborne* and *Hooper* cases will continue to be the law followed by a majority of the court. This means a sentence to death will not be reduced because it is excessive, out-of-line with punishment in similar cases, or the result of passion or prejudice.

I believe the decisions of this court in the *Osborne* and *Hooper* cases were wrong and should be overruled. It is not a matter of clemency to correct an injustice; it is simply the law at work.

The same date the *Gregg* case was published, the U.S. Supreme Court also approved the capital punishment laws in

Florida and Texas. In approving the capital punishment laws in these states, the court used the principles of the *Gregg* case as an example; although the opinions were brief, the message was the same — the responsible use of capital punishment. Commenting on the Florida law, the court stated:

> In fact, it is apparent that the Florida Court has undertaken responsibly to perform its function of death sentence review with a maximum of rationality and consistency. For example, it has several times compared the circumstances of a case under review with those of previous cases in which it has assessed the imposition of death sentences. *Proffit* v. *Florida,* 428 U.S. 242, 96 S. Ct. 2960, 2969 (1976).

Reviewing the Texas law, the court stated:

> By providing prompt judicial review of the jury's decision in a court with statewide jurisdiction, Texas has provided a means to promote the even-handed, rational and consistent imposition of death sentences under law. Because this system serves to assure that sentences of death will not be "wantonly" or "freakishly" imposed, it does not violate the Constitution. *Jurek* v. *Texas,* 428 U.S. 262, 96 S. Ct. 2950, 2958 (1976).

Comparing the procedures approved in these three cases with those in Arkansas, there is little doubt that a great deal remains to be done before the Arkansas law and procedure will be approved by the Supreme Court. First, there must be a law that the appeal of capital cases is prompt and automatic. Second, a majority of this court must accept the responsibility and see as its duty the obligation to compare sentences and to reduce any disproportionate sentence. Third, a majority of this court must recognize the authority and accept the duty to reduce any sentence found to be arbitrary, excessive or the result of passion or prejudice. In other words, this court cannot place the entire responsibility of the death penalty on the jury and the trial court, but must assume responsibility for insuring that the death penalty is rationally and fairly imposed.

It is clear to me that the Supreme Court of the United

230

States would like nothing better than to put this matter at rest. However, approval is predicated on a procedure for a fair and impartial sentence at the trial level, and a procedure for prompt and meaningful review by the appellate court.

The majority of this court cannot yet see all the deficiencies in the Arkansas law, but to me they are quite clear. Therefore, I will dissent.